07-0395-pr
Pettus v. Morgenthau

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term 2007

(Argued: June 3, 2008                              Decided: January 28, 2009)

Docket No. 07-0395-pr

_____

JAMES PETTUS,
*Plaintiff-Appellant,*

-v.-

ROBERT MORGENTHAU, CHARLES HYNES, PEOPLE OF
THE CITY AND STATE OF NEW YORK, RANDOLPH CLARK,
A.D.A. FRANK DUBIS, GLEN GOORD, THERESA KNAPP,
ANN AND ANY JOHN DOES, DONALD SELSKY, CAPT. RICHARDS,
Lt. McGEEVER, CAPT. WENDERLICH, JAMES ESGROW,
KENNETH McLAUGHLIN,
*Defendants-Appellees.*

_____

Before:        McLAUGHLIN, LIVINGSTON, *Circuit Judges,*
               and GERSHON, *District Judge.*[*]

Plaintiff, a prisoner, brought a lawsuit under 42 U.S.C. § 1983 challenging

various aspects of the procedures that resulted in his confinement at New York's

Southport Correctional Facility.  The United States District Court for the

_____

[*] The Honorable Nina Gershon, District Judge, United States District Court for the Eastern District of New York, sitting by designation.

Western District of New York, Richard J. Arcara, C.J., denied plaintiff's request to proceed *in forma pauperis* and dismissed the complaint, applying the "three-strikes" rule of 28 U.S.C. § 1915(g) and finding that plaintiff did not meet the exception to the "three-strikes" rule permitting a prisoner to proceed *in forma pauperis* when he is under imminent danger of serious physical injury. We conclude that plaintiff's complaint was properly dismissed.

Affirmed.

> WANDA D. BROWN,[**] JONATHAN D. HENRY[**] (Jon Romberg, Esq., *of counsel*), Newark, N.J., *for Amicus Curiae Seton Hall University School of Law Center for Social Justice in Support of Plaintiff-Appellant*.
>
> MARTIN A. HOTVET, Assistant Solicitor General (Andrea Oser, Deputy Solicitor General, Barbara D. Underwood, Solicitor General, *on the brief*), Albany, N.Y., *for Amicus Curiae Andrew M. Cuomo, Attorney General of the State of New York, in Support of Defendants-Appellees*.

LIVINGSTON, *Circuit Judge*:

Plaintiff-appellant James Pettus is a prisoner in New York State, where he is serving a sentence of six to twelve years for grand larceny in the third degree, welfare fraud in the third degree, offering a false instrument for filing in the first degree, and forgery in the second degree. He is also a frequent

---

[**] Appearing pursuant to 2d Cir. R. 46(e).

litigant in this Circuit, who appears on this Court's docket sheet as an appellant, movant, or petitioner in over sixty matters and in countless matters before the district courts. *See, e.g.*, *Pettus v. Brown*, No. 9:06-cv-152, 2007 WL 1791220, at *2-3 (N.D.N.Y. June 19, 2007) (collecting cases); *Pettus v. Goord*, No. 9:04-cv-0253 (LEK/RFT), 2006 WL 2806551, at *1 n.1 (N.D.N.Y Sept. 28, 2006) (same); *Pettus v. Horn*, No. 04 Civ. 459 (WHP), 2005 WL 2296561, at *1 n.1 (S.D.N.Y. Sept. 21, 2005) (same). Because three or more of his lawsuits while he has been detained have been dismissed as "frivolous [or] malicious or [for] fail[ure] to state a claim upon which relief may be granted," Pettus is ineligible by statute to file *in forma pauperis* ("IFP") "unless [he] is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

Pettus filed this suit in the United States District Court for the Western District of New York, asserting two principal claims: (1) that the People of the City and State of New York and the judges and district attorneys involved in his criminal trial did not follow proper procedures and sentenced him harshly, irrationally, without evidence, and out of racial animus; and (2) that various New York State Department of Correctional Services ("DOCS") employees who were involved with adjudicating alleged disciplinary infractions lodged against him at the Elmira Correctional Facility or who transferred him from Elmira to

3

the Southport Correctional Facility, a so-called supermax facility for especially violent offenders, were biased and incorrectly classified him. Pettus's complaint also alleges that at Southport he has been surrounded by hostile, aggressive, violent inmates who beat, rob, assault, extort, and sexually abuse him, and that he has been denied access to needed medication. However, the complaint does not seek any relief specifically related to the abusive conditions Pettus allegedly is enduring at Southport. Pettus does not appear to name anyone at Southport as a defendant, instead naming defendants, with one possible exception, involved in his original criminal trial or in the subsequent disciplinary proceedings brought against him at Elmira.

The district court (Arcara, C.J.) held that Pettus did not qualify for § 1915(g)'s "imminent danger" exception permitting so-called three-strike litigants to proceed IFP because there was no nexus between the claims Pettus sought to pursue in this action and the imminent danger of serious physical injury alleged in his complaint. Pettus appealed, and we appointed amicus curiae counsel to argue in support of his position. The Attorney General of the State of New York submitted a letter brief, as amicus curiae, on behalf of the various named defendants (who were not served before the complaint was dismissed). We agree with the district court that § 1915(g) allows a three-strikes

4

litigant to proceed IFP only when there exists an adequate nexus between the claims he seeks to pursue and the imminent danger he alleges. For the following reasons, we conclude that such a nexus exists when the three-strikes litigant seeks to redress an imminent danger of serious physical injury that is fairly traceable to a violation of law that the complaint asserts.

*     *     *

We begin, as we must, with the plain text of the Prison Litigation Reform Act ("PLRA"). *United States v. Gayle*, 342 F.3d 89, 92 (2d Cir. 2003) ("Statutory construction begins with the plain text and, if that text is unambiguous, it usually ends there as well."). Prisoners who do not have the financial resources to prepay docketing fees may proceed IFP. *See* 28 U.S.C. § 1915(a)-(b). However, the PLRA contains a "three-strikes" rule that bars prisoners from proceeding IFP if they have a history of filing frivolous or malicious lawsuits unless the exception for imminent danger applies. The statute reads as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which

5

> relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).  This Court has previously held that for a prisoner to qualify for the imminent danger exception, the danger must be present when he files his complaint – in other words, a three-strikes litigant is not excepted from the filing fee if he alleges a danger that has dissipated by the time a complaint is filed.  *Malik v. McGinnis*, 293 F.3d 559, 562-63 (2d Cir. 2002); *see also Abdul-Akbar v. McKelvie*, 239 F.3d 307, 313 (3d Cir. 2001) (en banc); *Medberry v. Butler*, 185 F.3d 1189, 1192-93 (11th Cir. 1999); *Banos v. O'Guin*, 144 F.3d 883, 884-85 (5th Cir. 1998) (per curiam); *Ashley v. Dilworth*, 147 F.3d 715, 717 (8th Cir. 1998) (per curiam).  But we have not previously addressed the question whether there must exist some nexus between the danger the petitioner alleges and the claims he asserts.

The amicus supporting Pettus argues that, by its terms, § 1915(g)'s "imminent danger" exception imposes no nexus requirement.  In its view, as long as the prisoner claims to be under imminent danger of serious physical injury, he can proceed IFP on any claim.  We disagree.  This position disregards our duty to consider the text *and the context* of the statute.  The amicus essentially is asking us to construe the exception clause *verbatim ac*

6

*litteratim*, ignoring the exception's place in the overall statutory framework. But when construing the plain text of a statutory enactment, we do not construe each phrase literally or in isolation. Rather, we attempt to ascertain how a reasonable reader would understand the statutory text, considered as a whole. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."); *County of Nassau v. Leavitt*, 524 F.3d 408, 414 (2d Cir. 2008) ("Statutory construction is a holistic endeavor. In interpreting statutes, this Court reads statutory language in light of the surrounding language and framework of the statute." (quoting *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 177 (2d Cir. 2006)) (internal quotation marks omitted)); *Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir. 2003) ("The text's plain meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute.").

As we have previously noted, "Congress adopted the Prison Litigation Reform Act with the principal purpose of deterring frivolous prisoner lawsuits and appeals." *Nicholas v. Tucker*, 114 F.3d 17, 19 (2d Cir.

7

1997).  Once three of an indigent prisoner's lawsuits have been dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted, the prisoner must pay the standard filing fee if he wishes to file additional lawsuits.  In the context of this statutory scheme, the imminent danger exception is designed to provide "a *safety valve* for the 'three strikes' rule." *Malik*, 293 F.3d at 563 (emphasis added) (quoting *Abdul-Akbar*, 239 F.3d at 315) (internal quotation marks omitted).  Its unmistakable purpose is to permit an indigent three-strikes prisoner to proceed IFP in order to obtain a judicial remedy for an imminent danger.  Under the amicus's proposed reading of the statute, however, an indigent prisoner with a history of filing frivolous complaints could, by merely alleging an imminent danger, file an unlimited number of lawsuits, paying no filing fee, for anything from breach of a consumer warranty to antitrust conspiracy.  No reasonable reader would understand the self-evidently narrow "imminent danger" exception to sweep so broadly.  Congress, after all, does not "hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).

Instead, we adopt the view of the district court that there must be a nexus between the imminent danger a three-strikes prisoner alleges to obtain IFP status and the legal claims asserted in his complaint.  We thus

8

confront the question of what this nexus might be. *Cf. United States v. Santos*, 541 F.3d 63, 69 (2d Cir. 2008) (observing, with regard to a different statute, that a "direct and substantial nexus" test, in the absence of further elaboration, was "too vague to give courts . . . sufficiently concrete guidance"). By analogy to our ordinary standing rules, we think that the statute requires that the prisoner's complaint seek to redress an imminent danger of serious physical injury and that this danger must be fairly traceable to a violation of law alleged in the complaint.

The law of standing provides the most natural analogy for giving content to the nexus requirement because the statute identifies a particular injury-in-fact (i.e., the imminent danger of serious physical injury) that Congress singled out for special protection. In the standing context, courts have used the redressability and causation requirements as a means of ensuring that there is an appropriate nexus between a plaintiff's alleged injury-in-fact and the claim for relief that the plaintiff wishes to assert. *See, e,g.*, *Linda R.S. v. Richard D.*, 410 U.S. 614, 617-18 (1973) (finding that "appellant has failed to allege a sufficient *nexus* between her *injury* and the *government action* which she attacks" (emphasis added)); *Flast v. Cohen*, 392 U.S. 83, 102 (1968) ("[I]n ruling on standing, it is both appropriate and

necessary . . . to determine whether there is a logical *nexus* between the status asserted and the claim sought to be adjudicated." (emphasis added)). Standing concepts, moreover, have been prudentially employed to ensure that a plaintiff's claim is within the zone of interests that Congress intended to protect by means of a particular statute – a question highly analogous to the one presented here. *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153 (1970) ("The question of standing . . . concerns . . . the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute . . . in question."). Finally, standing, like the § 1915(g) analysis, is intended to be a threshold issue at least tentatively decided at the outset of the litigation. *Ross v. Bank of Am., N.A. (USA)*, 524 F.3d 217, 222 (2d Cir. 2008) ("Standing is 'the threshold question in every federal case, determining the power of the court to entertain the suit.'" (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006))); *cf. Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) ("[Section] 1915(g) is not a vehicle for determining the merits of a claim.").

We can presume that Congress legislated with these background legal principles in mind. *See, e.g.*, *Nat'l Archives & Records Admin. v. Favish*, 541

U.S. 157, 169 (2004) ("We can assume Congress legislated against [the relevant] background of law, scholarship, and history . . . ."). Section 1915(g)'s exception "can serve its role as an escape hatch for genuine emergencies only if understood reasonably." *Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002). Absent some nexus between a complaint's claims and its allegation that a plaintiff is under imminent danger of serious physical harm, the injury-in-fact that Congress so carefully excepted from the general requirement that a three-strikes litigant pay his filing fees could go unaddressed by the litigation – a result clearly contrary to the *raison d'être* of the exception itself. When, in contrast, a complaint seeks to redress an imminent danger that is fairly traceable to allegedly unlawful conduct complained of in the pleading, the three-strikes litigant has shown that he fits squarely within § 1915(g)'s "escape hatch" and that payment of a filing fee should be excused. *Cf. Warth v. Seldin*, 422 U.S. 490, 498 (1975) ("In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.").

In sum, we hold that the complaint of a three-strikes litigant must reveal a nexus between the imminent danger it alleges and the claims it asserts, in order for the litigant to qualify for the "imminent danger"

exception of § 1915(g). In deciding whether such a nexus exists, we will consider (1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is *fairly traceable* to unlawful conduct asserted in the complaint and (2) whether a favorable judicial outcome would *redress* that injury.[1] The three-strikes litigant must meet both requirements in order to proceed IFP. This inquiry is not identical to our ordinary standing inquiry, but we believe it is sufficiently similar to afford guidance to courts considering the nexus question.

Given that both causation and redressability are components of § 1915(g)'s nexus requirement, a three-strikes prisoner cannot proceed IFP against law enforcement personnel involved in his criminal trial to whom

---

[1] We thus reject amici's alternative contention that only "but for" cause between an asserted illegality and an alleged imminent danger should be required. A "but for" causation test would undermine the purpose of § 1915(g) by allowing a three-strikes prisoner to proceed IFP against law enforcement officials or testifying victims who in some sense were a "but for" cause of the prisoner being in prison but whose connection to the actual imminent danger is remote. *See* 3 Richard J. Pierce, Jr., *Administrative Law Treatise* § 16.5, at 1154 (4th ed. 2002) ("Every significant act has a nearly infinite set of consequences as a result of the many complicated relationships documented by scientists and economists. Courts must limit the causal inquiry in some way for standing purposes. . . . [A] causal relationship is insufficient if it is insubstantial, remote, tenuous, or speculative."). Consequently, we employ the concept of "fairly traceable" in its ordinary form, which requires more than mere "but for" causation.

We also reject amici's contention that the canon of constitutional avoidance requires us to construe this statute narrowly. We have previously upheld the three-strikes rule against constitutional challenge, *see Polanco v. Hopkins*, 510 F.3d 152, 156 (2d Cir. 2007) (per curiam), and perceive no difficult constitutional questions in construing the statute as we do today.

prison conditions are not fairly traceable or in circumstances in which it is speculative to assert that judicial relief will actually redress these allegedly unlawful conditions. In Mr. Pettus's case, we assume without deciding that his allegations rise to the level of an imminent danger of serious physical injury. The bulk of Pettus's claims for relief are directed at asserted wrongs — such as his allegedly improper prosecution and inmate classification — that are much too attenuated from the imminent danger of serious physical injury he alleges to conclude that this danger may fairly be traced back to the asserted wrongs. *See Bennett v. Spear*, 520 U.S. 154, 167 (1997) (noting that standing has not been established if the injury complained of is "the result of the independent action of some third party not before the court" (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992))). Even if Pettus were entirely successful in pursuing these claims, moreover, the possibility that the judicial relief he would receive would redress the imminent danger he asserts is entirely speculative.

There is one possible exception to the preceding analysis. Pettus names as a defendant Glenn Goord, the Commissioner of DOCS. His complaint alleges that Pettus holds Goord responsible for "the hiring, practices, policies, customs, screening, training, supervising, controlling and

13

disciplining" of DOCS employees. The threatening conditions that Pettus claims to face at Southport may be fairly traceable to Goord's oversight of DOCS, of which Southport is a part. Granted, the complaint is most reasonably construed to assert that Goord failed to supervise and train the personnel at Elmira who incorrectly classified Pettus, and not any Southport personnel. But it perhaps could be argued that the complaint also seeks redress for Goord's supervision of Southport.

We need not decide this question, however, because even assuming that Pettus is entitled to proceed IFP, at least with regard to this aspect of his complaint, we still affirm the district court's judgment of dismissal. Pettus has failed to allege that Goord was *personally* responsible for the conditions at Southport, which prevents Pettus from obtaining money damages from Goord, the only form of relief he seeks. *See Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 753 (2d Cir. 2003). There is no suggestion in the complaint that Commissioner Goord had any personal involvement in the conditions alleged to exist at Southport. To the extent that the complaint attempts to assert a failure-to-supervise claim, moreover, it lacks any hint that Goord acted with deliberate indifference to the possibility that his subordinates would violate Pettus's constitutional rights. *See Poe v. Leonard*,

14

282 F.3d 123, 140 (2d Cir. 2002); *cf. Iqbal v. Hasty*, 490 F.3d 143, 166 (2d Cir. 2007) (suggesting that additional allegations of personal involvement may be required to avoid dismissal if a plaintiff's conclusory allegations of personal involvement are not "plausible, without allegations of additional subsidiary facts"), *cert. granted sub nom. Ashcroft v. Iqbal*, 128 S. Ct. 2931 (2008). Hence, we affirm the dismissal as against Goord because it fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2) ("Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . .").

We note that Pettus has other lawsuits pending in which he *has* named prison officials as defendants and does seek relief for allegedly dangerous conditions in prison. Today's decision does not hinder Mr. Pettus from pursuing these claims if they are properly presented in another action.[2]

Given our conclusion that Pettus's complaint was properly dismissed,

---

[2] Under an order issued last year and still outstanding (although not applicable to this case, which predates the order), Pettus is not permitted to file any appeals in this Circuit until he satisfies unpaid sanctions totaling $300. *See Pettus v. Brown*, No. 08-3646-pr (2d Cir. Oct. 10, 2008). The district court has continued to accept filings from Pettus, however.

both with regard to the bulk of its claims lacking any nexus to Pettus's alleged imminent danger of serious physical injury and with regard to the single claim for which an appropriate nexus may have been established, we need not consider whether the existence of *one* claim establishing such nexus would allow him to proceed IFP on other, unrelated claims in the same complaint. At least one court of appeals has answered this question, *Andrews v. Cervantes*, 493 F.3d 1047, 1053-55 (9th Cir. 2007), but we leave it for another day.

For the foregoing reasons, the judgment of the district court dismissing Pettus's complaint is AFFIRMED.

16