**Paul MARISCO, Plaintiff,**

v.

**NCO FINANCIAL SYSTEMS, INC., Defendant.**

**No. 12–CV–06220 (ADS)(WDW).**

United States District Court, E.D. New York.

May 23, 2013.

The Law Office of Joseph Mauro, LLC, by Joseph Mauro, Esq., Of Counsel, West Islip, NY, for the Plaintiff.

Sessions Fishman Nathan Israel LLC, by Aaron R. Easley, Esq., Of Counsel, Flemington, NJ, for the Defendant.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On January 28, 2013, the plaintiff Paul Marisco ("the Plaintiff" or "Marisco") filed an amended complaint against the Defendant NCO Financial Systems, Inc. ("the Defendant" or "NCO"), a debt collection agency, alleging a violation of the Plaintiff's privacy rights under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692c(b) *et seq.* ("FDCPA"). Presently pending before the Court is a motion by the Defendant to dismiss the amended complaint in its entirety pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, the motion to dismiss is denied.

# I. BACKGROUND

## A. *Factual Background*

The following facts are drawn from the Amended Complaint and construed in a light most favorable to the Plaintiff.

The Plaintiff, a consumer as defined by the FDCPA, allegedly owes a debt to the Defendant. To notify the Plaintiff about the disputed debt, the Defendant repeatedly left the following pre-recorded message on an answering machine in the Plaintiff's residence:

> This is an important message from NCO Financial Systems, Inc. The law requires that we notify that this is a debt collection company. This is an attempt to collect a debt and any information obtained will be used for that purpose. Please call Mack Harris today at 800–883–0613. Once again that number is 800–883–0613. Thank you.

(Amended Complaint ¶ 16.) According to the Plaintiff, "the Defendant was aware that there was a possibility that people other than the Plaintiff may be located within listening distance of the answering machine on which they intended to leave a message" (*Id.* ¶ 12.) The Plaintiff did not consent to the Defendant's leaving a message on his answering machine.

On at least one occasion, the Defendant left the above-quoted pre-recorded message on the Plaintiff's answering machine while the Plaintiff's mother-in-law was in the same room. She heard the message. The Plaintiff alleges that his "mother[-]in[-]law was aware that the message was intended for the Plaintiff as there was nobody other than the Plaintiff at that location that could have owed the alleged debt" (*Id.* ¶ 17.) The Plaintiffs asserts that, in leaving the message this way, the Defendant invaded the Plaintiff's privacy rights accorded by the FDCPA and embarrassed and humiliated the Plaintiff in front of his mother-in-law.

## B. *Procedural History*

On December 18, 2012, the Plaintiff commenced the instant action, asserting a single cause of action for violation of the provisions of 15 U.S.C. § 1692c(b) of the FDCPA. Thereafter, the Defendant moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The Plaintiff subsequently filed an amended complaint. The Defendant then filed a motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). That motion is currently pending before the Court.

# II. DISCUSSION

## A. *Legal Standard for Fed.R.Civ.P. 12(b)(6) Motion to Dismiss*

Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles. *See Harris v. Mills,* 572 F.3d 66 (2d Cir. 2009) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* (quoting *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937). "'Second, only a complaint that states a plausible

claim for relief survives a motion to dismiss and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal,* 556 U.S. at 663–64, 129 S.Ct. 1937). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiff's favor. *See Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990); *In re NYSE Specialists Secs. Litig.,* 503 F.3d 89, 91 (2d Cir.2007). Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief" will it grant dismissal pursuant to Fed.R.Civ.P. 12(b)(6). *Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir.1993). The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Todd v. Exxon Corp.,* 275 F.3d 191, 198 (2d Cir.2001) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

## B. *The Parties' Arguments*

In general terms, the Defendant contends that the Plaintiff's claim fails as a matter of law because 15 U.S.C. § 1692c(b) proscribes only the deliberate disclosure of a consumer's debt to third parties, not the inadvertent disclosure of the type alleged to have occurred here. In opposition, the Plaintiff contends that the plain terms of the statute dictate otherwise and notes that the FDCPA is generally a strict liability statute. In any event, the Plaintiff insists that he has sufficiently plead that the Defendant knowingly communicated with a third party about his debt in violation of the FDCPA. In reply, the Defendant argues that strict liability exists under 15 U.S.C. § 1692c(b) only *after* the Plaintiff establishes a predicate violation of the provision—that is, an impermissible communication to a third party about the debt. The Defendant further asserts that a communication to a third party encompasses only intentional communications not of the type alleged here and, in any event, the subject communications did not concern a debt.

## C. *Statutory Background*

In construing a statute, the Court begins with the plain language, giving all undefined terms their ordinary meaning. *See Schindler Elevator Corp. v. United States ex rel. Kirk,* —— U.S. ——, 131 S.Ct. 1885, 1891, 179 L.Ed.2d 825 (2011); *United States v. Desposito,* 704 F.3d 221, 226 (2d Cir.2013); *23–34 94th St. Grocery Corp. v. N.Y.C. Bd. of Health,* 685 F.3d 174, 182 (2d Cir.2012). In interpreting a statute, the "inquiry must cease if the statutory language is unambiguous." *See Schindler Elevator Corp.,* 131 S.Ct. at 1893. Courts "must presume that the statute says what it means." *Devine v. U.S.,* 202 F.3d 547, 551 (2d Cir.2000). However, in interpreting a statute, courts are not to "construe each phrase literally or in isolation." *Pettus v. Morgenthau,* 554 F.3d 293, 297 (2d Cir.2009). The Court must "attempt to ascertain how a reasonable reader would understand the statutory text, considered as a whole." *Id.* If the text is ambiguous, the Court will look to legislative history and other tools of statutory interpretation. *See Auburn Hous. Auth. v. Martinez,* 277 F.3d 138, 143–44 (2d Cir.2002).

█ Relevant here, Congress enacted the FDCPA "to protect consumers from deceptive or harassing actions taken by debt collectors[,]" *Kropelnicki v. Siegel,* 290 F.3d 118, 127 (2d Cir.2002), with the purpose of "limiting the suffering and anguish often inflicted by independent debt collectors," *Russell v. Equifax A.R.S.,* 74 F.3d 30, 34 (2d Cir.1996) (internal quotation marks omitted). Section 1692c(b) of the FDCPA prohibits debt collectors communicating with third parties from revealing that the consumer owes a debt:

"Communications with third parties. Except as provided in section 804 [15 U.S.C. 1692b], without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."

15 U.S.C. § 1692c(b). However, third-party communications are permitted for the limited purpose of determining a debtor's location but the content of these communications is strictly defined, and the debt collector cannot disclose that the debtor owes any debt. 15 U.S.C. § 1692b(2).

The definition of communications in the FDCPA is "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C.

█ § 1692a(2). Courts generally consider, and the parties do not dispute, that pre-recorded messages and voice mail messages from debt collectors are "communications," even if the messages do not state what the calls are regarding. *See*

*e.g., Dona v. Midland Credit Mgmt., Inc.,* No. 10 CV 825, 2011 WL 941204, at *1 (E.D.N.Y. Feb. 10, 2011) (stating that " '[c]ommunications under the [FDCPA] include telephone calls and messages left on a consumer's answering machine"); *Foti v. NCO Fin. Sys.,* 424 F.Supp.2d 643, 655–56 (S.D.N.Y.2006) (holding that a voice mail message is a "communication" under the FDCPA).

█ Finally, as a general matter, "[d]ebt collectors that violate the FDCPA are strictly liable," meaning that "a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Easterling v. Collecto, Inc.,* 692 F.3d 229, 234 (2d Cir.2012) (quoting *Russell,* 74 F.3d at 33 (internal quotations omitted)). However, a debt collector may escape liability if it can demonstrate by a preponderance of the evidence that its "violation [of the Act] was not intentional and resulted from a *bona fide error* notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c) (emphasis added).

D. *As to Whether Stating a Cause of Action Under 15 U.S.C. § 1692c(b) Requires the Debtor to Plead that the Debt Collector Intended its Communication to Reach a Third–Party*

As an initial matter, the Court finds that the Plaintiff's allegations that the Defendant "knowingly" communicated about a debt with a third party to be conclusory. Therefore, whether the Plaintiff can withstand a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) turns in part on whether Plaintiff must allege intent.

The FDCPA is silent as to the permissibility of messages left on answering machines. Furthermore, the case law in the Second Circuit and in this District regard-

ing the extent to which 15 U.S.C. § 1692c(b) applies to inadvertent communications to third parties over answering machines remains sparse at best.

However, a line of district court cases from other jurisdictions, most notably *Mostiller v. Chase Asset Recovery Corp.*, No. 09 CV 218, 2010 WL 335023 (W.D.N.Y. Jan. 22, 2010), decline to extend the FDCPA to inadvertent communications. In *Mostiller*, the court rejected a plaintiff's claim for damages arising out of the fact that defendant's message was overheard by a third party, the plaintiff's live-in fiancée. The court explained its holding by stating that "[t]he FDCPA was intended to protect against deliberate disclosures to third parties as a method of embarrassing the consumer," rather than to "protect against the risk of an inadvertent disclosure that could occur if another person unintentionally overheard the messages left on [plaintiff's] voicemail." *Id.* at *3 (quoting *Mark v. J.C. Christensen & Assocs., Inc.*, No. 09 CV 100, 2009 WL 2407700, at *5 (D.Minn. Aug. 4, 2009)); *see also Joseph v. J.J. Mac Intyre Cos., L.L.C.*, 281 F.Supp.2d 1156, 1164 (N.D.Cal. 2003). These cases essentially immunize debt collectors from liability under 15 U.S.C. § 1692c(b) unless the debt collectors have "reason to suspect" that a third party would overhear the message. *Clayson v. Rubin & Rothman, LLC*, 751 F.Supp.2d 491, 496 (W.D.N.Y.2010).

However, other courts have declined to adopt the reasoning in *Mostiller* with regard to its apparent failure to "treat the FDCPA as a strict liability statute" (*Friedman v. Sharinn & Lipshie, P.C.*, No. 12 CV 3452, 2013 WL 1873302 at *4 n. 8 (E.D.N.Y. Mar. 28, 2013), *adopted by* 2013 WL 1869924 (E.D.N.Y. May 3, 2013) (citing *Travers v. Collecto, Inc.*, No. 12 CV 11557, 2013 WL 55819, at *2 (D.Mass. Jan. 2, 2013))). For example, in *Berg v. Mer-*

*chants Ass'n Collection Div., Inc.*, 586 F.Supp.2d 1336 (S.D.Fla.2008), the collection agency left multiple messages, which were overheard by various third parties. The court rejected the agency's argument that the messages overheard by third parties did not violate the FDCPA's prohibition on third-party communications. *See id.* at 1343; *see also Leahey v. Franklin Collection Service, Inc.*, 756 F.Supp.2d 1322, 1327–28 (N.D.Ala.2010) (adopting *Berg* ); *F.T.C. v. Check Enforcement*, No. Civ. A. 03–2115, 2005 WL 1677480, at *8 (D.N.J. July 18, 2005) (concluding that collectors engaged in prohibited communications with third parties by leaving messages on home answering machines that were overheard by third parties).

The Court finds that the latter approach—specifically, holding that pleading a cause of action under 15 U.S.C. § 1692c(b) does not require the pleading of intent on the part of the debt collector—more nearly comports with the plain meaning of 15 U.S.C. § 1692c(b) and the overall structure of the FDCPA. As the Plaintiff notes, on its face, nothing in 15 U.S.C. § 1692c(b) requires a debtor to plead that the debt collector "knowingly" or "intentionally" disclosed the existence of a debt to a third party. In *Zortman v. J.C. Christensen & Associates, Inc.*, 819 F.Supp.2d 874, 879 (D.Minn.2011), the court opined:

> A person communicates when he or she shares with or conveys information to another. See Webster's New Collegiate Dictionary 224 (1979). It is therefore possible to communicate with someone in spite of lacking a deliberate or purposeful intent to convey something to that particular person—for example, one may communicate with an unintended audience. Further, to the extent that the FDCPA is ambiguous as to whether "communicate … with" requires deliberate or purposeful intent, any such am-

biguity vanishes on consideration of the FDCPA as a whole. The FDCPA is a strict liability statute, which conflicts with requiring deliberate or purposeful intent.

*Id.*

In addition, while the FDCPA is generally a strict liability statute,

'Congress took care to require an element of knowledge or intent in certain portions of the FDCPA where it deemed such a requirement necessary' .... *see, e.g.,* 15 U.S.C. § 1692d(5)('Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously *with intent* to annoy, abuse, or harass any person at the called number.') (emphasis added); 15 U.S.C. § 1692f(3) ('The solicitation of a debt collector of any postdated check ... *for the purpose* of threatening or instituting criminal prosecution.') (emphasis added); 15 U.S.C. § 1692c ('a debt collector may not communicate with a consumer in connection with the collection of any debt at any unusual time or place ... *known or which should be known* to be inconvenient to the consumer.') (emphasis added).

*Clark v. Capital Credit & Collection Services, Inc.,* 460 F.3d 1162, 1176 n. 11 (9th Cir.2006), (citation omitted) (emphasis in original). Thus, if Congress had intended to engraft an "intent" or "knowledge" element to state a cause of action under 15 U.S.C. § 1692c(b), it clearly would have done so. *Andrus v. Glover Constr. Co.,* 446 U.S. 608, 616–617, 100 S.Ct. 1905, 64 L.Ed.2d 548 (1980) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.").

 The bona fide error defense pursuant to 15 U.S.C. § 1692k(c) provides further support for not reading an "intent"

element into 15 U.S.C. § 1692c(b). "If violations of the FDCPA required deliberate or purposeful intent, then the bona fide error defense's 'not intentional' element would tend toward surplusage." *Zortman,* 819 F.Supp.2d at 880. In this vein, the plaintiff need not plead intent to state a cause of action; rather, the question of whether the third-party disclosure here was intentional or unintentional is more appropriately reserved, if at all, for a motion for summary judgment or at trial.

**E. *As to the Defendant's Argument that the Plaintiff's View of the Statute Would Place it Between a "Rock and a Hard Place "***

NCO argues that penalizing debt collectors for inadvertent third-party disclosures places them in the untenable position of having to choose between complying with 15 U.S.C. § 1692c(b) and complying with the requirement that debt collectors identify themselves in messages to debtors under 15 U.S.C. § 1692e(11). This argument, (sometimes described as a "rock and a hard place," "Scylla and Charybdis," "Morton's Fork," "Hobson's choice," or "Catch 22"), has been "almost universally rejected." *Zortman v. J.C. Christensen & Associates, Inc.,* 870 F.Supp.2d 694, 699 (D.Minn.2012). For example, in *Leyse v. Corporate Collection Servs., Inc.,* No. 03 Civ. 8491, 2006 WL 2708451, at *4 (S.D.N.Y. Sept. 18, 2006), a defendant argued that the FDCPA places debt collectors between "a rock and a hard place" in the sense that debt collectors "must choose between violating Section 1692d(6)'s meaningful disclosure requirement by leaving ... messages which do not clearly identify themselves, and violating Section 1692c(b)'s privacy requirement by identifying themselves to third parties." *Id.* at *4. The debt collector further argued that leaving the recorded messages on the con-

sumer's home telephone number did not cure the dilemma because the possibility still existed that a spouse, relative, or roommate would listen to the message. *Id.* The court was not persuaded:

> The premise of [the defendant's] argument is that they are expressly entitled to use pre-recorded messages for debt collection. However, just because a debt collector is permitted to continue to attempt to collect the debt does not entitle the collector to use any means, even if those means are the most economical or efficient.... The Court has no authority to carve an exception out of the statute just so [the defendant] may use the technology they have deemed most efficient.... [The defendant] has been cornered between a rock and a hard place, not because of any contradictory provisions of the FDCPA, but because the method they have selected to collect debts has put them there.

*Id.* at *5 (citations and quotations omitted); *see also Baker v. Allstate Fin. Servs., Inc.*, 554 F.Supp.2d 945, 950 (D.Minn.2008) (finding that the defendant's argument that by properly disclosing its identity it might violate § 1692c(b) has been "repeatedly rejected in the context of debt collector messages left on a consumer's home voicemail").

In addition, "just because a debt collector is permitted to continue to attempt to collect the debt does not entitle the collector to use any means, even if those means are the most economical or efficient." *Foti,* 424 F.Supp.2d at 659; *see Clomon v. Jackson,* 988 F.2d 1314, 1321 (2d Cir.1993) ("It is apparent that mass mailing may sometimes be the only feasible means of contacting a large number of delinquent debtors, particularly when many of those debtors owe relatively small sums. But it is also true that the FDCPA sets bound-

aries within which debt collectors must operate."). Here,

> that [NCO] may not be able to leave a pre-recorded message that complies with both § 1692e(11) and § 1692c(b) of the Act in no way warrants a conclusion that 'communications' should be narrowly interpreted. Rather, it merely suggests that a debt collector is not permitted to leave a pre-recorded message in violation of the FDCPA. Debt collectors, however, could continue to use other means to collect, including calling and directly speaking with the consumer or sending appropriate letters. Thus, the alleged 'Hobson's Choice' in this case is self-imposed by [NCO]. It is only because of the method of debt collection selected—calling and leaving the type of pre-recorded messages—that [NCO] is faced with this potential dilemma.

*Foti,* 424 F.Supp.2d at 659; *see also Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1354 (11th Cir.2009) ("[I]f [the debt collector's] assumption is correct, the answer is that the [FDCPA] does not guarantee a debt collector the right to leave answering machine messages."); *Sclafani v. BC Servs., Inc.*, No. 10–61360–CIV, 2010 WL 4116471, at *3 (S.D.Fla. Oct. 18, 2010) ("If [the defendant] could not leave voice messages that simultaneously complied with the multiple applicable provisions of FDCPA, it should not have left the offending voice messages."); *Berg,* 586 F.Supp.2d at 1344 (describing automated telephone messages as an "inherently risky method of communication" and noting that debt collectors could use such a mode of communication at their peril).

Indeed, leaving a message on an answering machine is "inherently risky" because it is well known that, unlike a voicemail message, a message left on an answering machine can be easily heard within a cer-

tain distance. "As the Supreme Court has held in the general context of consumer protection—of which the [FDCPA] is a part—'it does not seem unfair to require that one who goes deliberately close to an area of proscribed conduct shall take the risk that he may cross the line.'" *Russell*, 74 F.3d at 35 (quoting *FTC v. Colgate–Palmolive Co.*, 380 U.S. 374, 393, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965)) (additional quotations omitted).

In any event, "[d]ebt collectors have other methods to reach debtors including posting mail, in-person contact, and speaking directly by telephone." *Berg*, 586 F.Supp.2d at 1344. In addition, under the Court's ruling, a debt collector may still avoid liability under 15 U.S.C. § 1692c(b) for a message on an answering machine that is heard by a third party if it establishes a bona fide error defense; does not reveal that the communication concerns a debt of the consumer; or is communicated with the consumer's consent.

### F. *As to Whether the Plaintiff Sufficiently Pleaded that Defendant Disclosed the Existence of a Debt to a Third Party*

In addition to arguing that the Plaintiff failed to sufficiently plead intent on the part of the Defendant under 15 U.S.C. § 1692c(b), the Defendant argues that the Plaintiff fails to sufficiently plead that the Defendant disclosed the existence of a debt to a third party. The Defendant emphasizes that the plaintiff fails to allege that the communication to the Plaintiff's mother-in-law revealed the name of the creditor or the amount of the balance due.

In support of this contention, the Defendant relies on *Fashakin v. Nextel Comms.*, No. 05 Civ. 3080(RRM), 2009 WL 790350 (E.D.N.Y. Mar. 25, 2009). In *Fashakin*, a representative of a debt collector repeatedly called the debtor at her place of work

and told the receptionists that the plaintiff owed a debt to the debt collector and that if she did not pay this debt, she would "be reported to the credit bureau" and "her credit would be damaged." *Id.* at *7. The court opined that "[s]uch allegations, if true, would violate the FDCPA." *Id.* at *18. However, the court dismissed the plaintiff's 15 U.S.C. § 1692c(b) allegations at the summary judgment stage because plaintiff's offered only inadmissible hearsay in this regard. Of importance, in *Fashakin*, the court made no pronouncements as to whether the type of allegations there—namely, identifying the debtor and impugning the debtor's credit history—were necessary to state a claim under 15 U.S.C. § 1692c(b).

■ The Defendant also fails to cite to any authority that this information, namely the name of the creditor or the amount of the underlying balance, is necessary for a third–party communication to run afoul of 15 U.S.C. § 1692c(b). Here, the Defendant identified itself as a debt collection company and that it was attempting to collect a debt. The Court finds that these allegations, directed to the Plaintiff's answering machine at his residence, constitutes a pleading that the subject third-party communication occurred "in connection with the collection" of a debt. 15 U.S.C. § 1692c(b).

### G. *As to the Defendant's Authorities*

The Defendant makes much of a 1992 Staff Opinion Letter of the Federal Trade Commission (FTC), the agency Congress charged with the authority to enforce the FDCPA. The 1992 letter states that the purpose of § 1692c(b) was to "prevent unscrupulous debt collectors from embarrassing consumers and invading their privacy be revealing the existence of their debt to friends, neighbors or other third parties." FTC Staff Opinion Letter Bo-

rowski Nov. 6, 1992, available at http://www.ftc.gov/os/statutes/fdcpa/letters/borowski.htm. "This letter suggests that § 1692c(b) was intended to prevent debt collectors from purposely shaming debtors in front of others, rather than generally protecting a consumer's right to privacy." *Berg*, 586 F.Supp.2d at 1342.

The Defendant also relies on an FTC Staff Commentary from 1988, in which the FTC stated that "[a] debt collector does not violate this provision when an eavesdropper overhears a conversation with the consumer, unless the debt collector has reason to anticipate the conversation will be overheard." Federal Trade Commission Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. 50104 (Dec. 13, 1988). "The example given here by the FTC suggests that the FDCPA is violated by debt collectors who leave messages for consumers while aware that the message may be heard by others." *Berg*, 586 F.Supp.2d at 1342.

However, neither of these agency interpretations of the FDCPA specify whether a consumer must plead an intentional impermissible disclosure or, alternatively, whether a debt collector must plead non-intent as part of its bona fide error defense. Accordingly, the Court deems the Defendant's reliance on these authorities to be unpersuasive.

## III. CONCLUSION

In sum, the Court finds that the Plaintiff properly plead a cause of action under 15 U.S.C. § 1692c(b). Thus, it is hereby

**ORDERED,** that the motion by the Defendant NCO Financial Systems, Inc. to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) is denied; and it is further

**ORDERED,** that the Clerk of the Court is directed to close the first motion to dismiss.

**SO ORDERED.**