**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-2312**

DAVID MEYERS,

Plaintiff - Appellant,

v.

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Ellen L. Hollander, District Judge.  (1:18-cv-00129-ELH)

**No. 18-7417**

DAVID MEYERS,

Plaintiff - Appellant,

v.

GOVERNOR RALPH S. NORTHAM, Governor of Virginia,

Defendant - Appellee.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.  Michael F. Urbanski, Chief District Judge.  (7:18-cv-00473-MFU-RSB)

Argued:  December 10, 2019                           Decided:  January 28, 2020

Before WILKINSON, THACKER, and RUSHING, Circuit Judges.

Application in 18-2312 denied; application in 18-7417 granted, but dismissal affirmed by unpublished per curiam opinion.

**ARGUED:** Lee Ann Anderson, GREENBERG TRAURIG, LLP, Washington, D.C., for Appellant.  Lowell Vernon Sturgill, Jr., UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Martine Elizabeth Cicconi, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees.  **ON BRIEF:** Gregory Dolin, UNIVERSITY OF BALTIMORE SCHOOL OF LAW, Baltimore, Maryland, for Appellant.  Joseph H. Hunt, Assistant Attorney General, Barbara L. Herwig, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Robert Hur, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee Commissioner of Social Security Administration.  Mark R. Herring, Attorney General, Toby J. Heytens, Solicitor General, Matthew R. McGuire, Principal Deputy Solicitor General, Michelle S. Kallen, Deputy Solicitor General, Brittany M. Jones, John Marshall Fellow, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee Governor Ralph S. Northam.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

David Meyers ("Appellant"), a Virginia state prisoner, seeks to proceed in forma pauperis ("IFP") without prepayment of fees in two consolidated appeals from: (1) the District of Maryland's denial of an action to review a social security award; and (2) the Western District of Virginia's dismissal of Appellant's petition for mandamus.

The Prison Litigation Reform Act ("PLRA") provides that a prisoner may not bring an appeal under IFP status if he has, on three or more occasions, brought an action in federal court that was dismissed on the grounds that it was frivolous, malicious, or failed to state a claim (often referred to as "three strikes"). *See* 28 U.S.C. § 1915(g). There is one exception noted in the statute: "unless the prisoner is under imminent danger of serious physical injury." *Id*. (the "Imminent Danger Provision"). Because it is undisputed that three or more of Appellant's claims have been dismissed on the ground that they were frivolous, he is ineligible for IFP status unless he satisfies the Imminent Danger Provision.

We conclude that in order for a prisoner to satisfy the Imminent Danger Provision, there must be a nexus between the IFP application and the underlying complaint. For the reasons that follow, we deny Appellant's IFP application as to the social security claim. We grant his IFP application as to the mandamus petition, but nonetheless affirm dismissal of the petition.

I.

A.

Social Security Claim

On January 12, 2018, Appellant filed a pro se complaint in the District of Maryland against the Commissioner of the Social Security Administration ("SSA"), alleging an error in a 2014 Supplemental Security Income backpay award, and a due process violation in his SSA proceedings. *See* Notice of Claim at 1–2, *Meyers v. Comm'r of Soc. Sec. Admin.*, No. 1:18-cv-129 (D. Md. filed Jan. 12, 2018) (the "SSA Claim"), ECF No. 1; J.A. 6–7.[1] He asked for a 1997 disability claim to be reopened and for monthly deductions from his SSI benefits "be vacated and back payments be ordered." J.A. 7. He also filed a motion to proceed IFP, which the district court granted. However, Appellant lost on the merits, as the district court granted SSA's summary judgment motion on October 17, 2018. Appellant filed a notice of appeal on October 30, 2018.

B.

Petition for Mandamus

On September 24, 2018, while the SSA Claim was still pending, Appellant filed a petition for writ of mandamus in the Western District of Virginia, asking the court to direct the Governor of Virginia to "cease and desist [prison] employees['] racketeering networks" and instruct the state police to "immediately investigate the racketeering acts and conspiracy of [those] employees." *See* Pet. at 2, *Meyers v. Northam*, No. 7:18-cv-473

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

(W.D. Va. filed Sept. 24, 2018), ECF No. 1 (the "Mandamus Action"); J.A. 22. Specifically, Appellant alleged that employees at Virginia's Red Onion State Prison (where he was being held at the time) "racketeer[ed]" funds from his inmate prison account; "enforce[d] sexual abuses on [him]"; and "conspired with numerous correctional employees at [Red Onion]" to "racketeer funds from [his] account" through a "scheme to enforce sexual abuses, attempted murders[,] death threats[,] and serious injuries on the disabled [Appellant] to racketeer his funds." *Id.* at 21–22.

On November 2, 2018, the district court dismissed the Mandamus Action as frivolous pursuant to the PLRA because "the court cannot grant the mandamus relief [Appellant] seeks," as it "lacks jurisdiction to grant mandamus relief against state officials or state agencies." J.A. 23–24 (citing 28 U.S.C. § 1915A(b)(1)). The district court also declined to construe the petition as a 42 U.S.C. § 1983 action because it "fail[ed] to state a cognizable federal claim against the Governor." *Id.* at 23. Appellant filed a notice of appeal two weeks later, on November 16, 2018.

## C.

## The Appeals

On December 3, 2018, with appeals of the SSA Claim and the Mandamus Action pending in this court, Appellant filed applications pursuant to the PLRA to proceed IFP without prepayment of fees in both appeals.

In his IFP application regarding the SSA Claim, Appellant claimed he was "being detained and held under false imprisonment and wrongful conviction due to retaliation by drug lord Maurice Rives and Commonwealth of Virginia due to my information to Federal

5

Bureau of Investigation on drug lord Maurice Rives crime family," and explained, "I am under imminent danger -- drug lord Maurice Rives has a 50,000.00 reward for anyone who kills me." App. at 2, *Meyers v. Comm'r Soc. Sec. Admin.*, No. 18-2312 (4th Cir. filed Dec. 3, 2018), ECF No. 6. In response to whether he has had cases dismissed as frivolous, malicious, or for failure to state a claim, Appellant stated:

> I'm going to commit suicide. I'm tired of living and the organized crime RICO networks and my custodian working together to kill me. My custodian Jeffrey Kiser and my new custodian Carl Manis refuse to protect me from the hired gang members by drug lord Rives and the RICO enterprises to kill me. My custodians refuse to give me mental health services; I'm hearing voices telling me to kill myself because drug lord and DOC going to.

*Id.* In response to whether he is under imminent danger of serious physical injury, Appellant stated:

> My custodians Jeffrey Kiser, Carl Manis, Harold Clarke refuse to protect me from crime bosses and hired assassins perservering [sic] to kill me. I was court ordered to be in protective custody in 7:16-cv-00573.[2] Harold Clarke and above custodians removed me from PC-Unit to a security level 5 general population as retaliation so I be killed. I suffer from schizophrenia and I haven't been given my Trilafon for hallucinations since 2016 and the gang members going to kill me when I come out cell.

*Id.* Although the IFP application Appellant filed in the Mandamus Action appeal is worded slightly differently than the application filed in the SSA Claim appeal, it is the same in all material respects.

---

[2] This case is currently under seal.

6

We consolidated the appeals on December 20, 2018, appointed counsel, and ordered briefing with a focus on this question: "Whether allegation of imminent danger of serious physical injury under 28 U.S.C. § 1915(g) . . . must have a nexus to claims in the complaint." Notice at 1, *Meyers v. Comm'r Soc. Sec. Admin.*, No. 18-2312 (4th Cir. filed Jan. 31, 2019), ECF No. 8; *see also* Notice at 1, *Meyers v. Northam*, No. 18-7417 (4th Cir. filed Jan. 31, 2019), ECF No. 7.

## II.

The PLRA provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, *unless the prisoner is under imminent danger of serious physical injury*.

28 U.S.C. § 1915(g) (emphasis supplied). Appellant urges us not to read a nexus requirement into the Imminent Danger Provision, arguing, "The language of § 1915(g) is clear -- a prisoner with three prior strikes against him must either prepay his filing fee before a court will docket his claim or appeal *or* show that he is 'under imminent danger of serious physical injury.'" Appellant's Br. 28 (quoting 28 U.S.C. § 1915(g)) (emphasis in original). Further, "Congress could well have required a prisoner who seeks to avail himself of the 'imminent danger' provision to show that the danger is related to the conduct being complained of in the suit," and "could have easily appended the nexus qualifier" to the Imminent Danger Provision, but it did not do so. *Id*. at 28, 29.

7

In turn, Virginia Governor Ralph Northam and Commissioner of the SSA (collectively, "Appellees") contend that the "unmistakable purpose" of the Imminent Danger Provision "is to permit an indigent three-strikes prisoner to proceed IFP in order to obtain a judicial remedy for an imminent danger." Northam Br. 2 (quoting *Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009)); *see also* SSA Br. 2 (contending the Imminent Danger Provision "should apply only where the claims in a prisoner's complaint include a request for relief for the imminent danger alleged" (citing *Pettus*, 554 F.3d at 297)). Appellees urge us to follow the Second Circuit's decision in *Pettus v. Morgenthau* and hold that, "to be eligible for treatment under the [Imminent Danger Provision], the 'danger of serious physical injury must be fairly traceable to a violation of law alleged in the complaint.'" Northam Br. 2 (quoting *Pettus*, 554 F.3d at 297 (alteration omitted)); *see also* SSA Br. 23 (claiming the Second Circuit's nexus test is "hardly taxing" on a court).

We first address the necessary relationship between the IFP application and underlying claim. Then, we address Appellant's IFP applications.

A.

The Relationship Between the IFP Application
and the Underlying Claim

Appellant contends that there need not be a nexus between the allegations in the IFP application and the complaint the applicant seeks to file because the plain language of the Imminent Danger Provision does not explicitly require such a relationship. Thus, Appellant would have us read the provision to allow three-strike prisoners to file any type of claim they wish without prepayment of fees, as long as they allege some related or

8

unrelated imminent danger in the IFP application. We decline to adopt this view of the Imminent Danger Provision because it "disregards our duty to consider the text *and the context* of the statute." *Pettus*, 554 F.3d at 297 (emphasis in original).

Appellant's argument is grounded in a literal, but isolated, reading of the Imminent Danger Provision. It is true that "we must [start] with the plain language of the statute because 'when the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms.'" *Lynch v. Jackson*, 853 F.3d 116, 121 (4th Cir. 2017) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (alteration supplied)). However, "language is not read in isolation, rather '[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Id.* (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) (alteration in *Lynch*)); *see also Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) (We look to "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.").

"With the [PLRA], Congress sought to reduce the number of frivolous lawsuits flooding the federal courts." *Blakely v. Wards*, 738 F.3d 607, 609 (4th Cir. 2013) (en banc); *see also Pettus*, 554 F.3d at 297 ("Congress adopted the [PLRA] with the principal purpose of deterring frivolous prisoner lawsuits and appeals." (internal quotation marks omitted)). According to the PLRA's statutory scheme, to further this purpose, once a prisoner has received three "strikes," he or she must pay a filing fee before filing additional claims.

9

The Imminent Danger Provision, read in context, allows a very narrow class of prisoner claims to bypass the "three strikes" rule. As the Second and Third Circuits have recognized, the Imminent Danger Provision "is designed to provide a safety valve for the 'three strikes' rule." *Pettus*, 554 F.3d at 297 (quoting *Malik v. McGinnis*, 293 F.3d 559, 563 (2d Cir. 2002)) (emphasis omitted); *see also Abdul-Akbar v. McKelvie*, 239 F.3d 307, 315 (3d Cir. 2001) ("By using the term 'imminent,' Congress indicated that it wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those harms that had already occurred."). And in the case at hand, Appellant's counsel admitted that the purpose of the Imminent Danger Provision was to "*protect* the[] [three-strikes prisoner] from serious physical injury." Oral Arg. at 6:12–48, *Meyers v. Comm'r Soc. Sec. Admin.*, No. 18-2312 (4th Cir. Dec. 10, 2019) (emphasis supplied), http://www.ca4.uscourts.gov/oral-argument/listen-to-oral-arguments. Congress was clearly concerned that, despite its penchant for curbing frivolous prisoner claims, there are situations so dire that a three-strikes prisoner should nonetheless be able to ask a court to come to his aid without prepayment of a fee.

Under Appellant's reasoning, however, a prisoner could pass through the safety valve with no intention of asking the courts to protect him. Indeed, "an indigent prisoner with a history of filing frivolous complaints could, by merely alleging an imminent danger, file an unlimited number of lawsuits, paying no filing fee, for anything from breach of a consumer warranty to antitrust conspiracy." *Pettus*, 554 F.3d at 297. Considering that the Imminent Danger Provision is subject to mere notice pleading standards, Appellant's reading of the Imminent Danger Provision would sweep so broadly that it would allow a

narrow exception to swallow a carefully contoured rule. *See Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 585 (6th Cir. 2013) (explaining the Imminent Danger Provision "is essentially a pleading requirement subject to the ordinary principles of notice pleading," and "plaintiff need only to assert allegations of imminent danger; he need not affirmatively prove those allegations at this stage of litigation." (alteration and internal quotation marks omitted)).

Rather, the better reading of the Imminent Danger Provision is that it requires a relationship between the imminent danger alleged in the IFP application and the facts alleged and relief sought in the underlying claim. There is no indication in the text of § 1915(g) that Congress meant to distinguish between classes *of prisoners* -- i.e., those three-strikers who are suffering imminent danger and those who are not. Rather, the text distinguishes based on a class *of claims* -- civil actions or appeals that a "prisoner [may or may not] bring." 28 U.S.C. § 1915(g).

The ordinary meaning of the word "imminent" also supports this interpretation. "Imminent" means "threatening to occur immediately; dangerously impending" or "[a]bout to take place." Black's Law Dictionary (11th ed. 2019); *see Perrin v. United States*, 444 U.S. 37, 42 (1979) (explaining that courts give undefined words in a statute their "ordinary, contemporary, common meaning"); *Nat. Coal. for Students v. Allen*, 152 F.3d 283, 289 (4th Cir. 1998) ("We customarily turn to dictionaries for help in determining whether a word in a statute has a plain or common meaning."). We have also explained that "the requisite imminent danger of serious physical injury must exist at the time the complaint or the risk that the conduct complained of threatens continuing or future injury,

11

not on whether the inmate deserves a remedy for past misconduct." *Chase v. O'Malley*, 466 F. App'x 185, 186 (4th Cir. 2012) (per curiam) (citing *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003)). Thus, Congress intended that a three-strikes prisoner have opportunity to ask the court for its aid in addressing a danger that is close at hand, not a past infraction.

For all these reasons, we conclude the allegations of imminent danger in the IFP application must have some nexus or relation to those of the underlying complaint. All our sister circuits to have addressed this matter are in agreement. *See Lomax v. Ortiz-Marquez*, 754 F. App'x 756, 759 (10th Cir. 2018), *cert. granted on other grounds*, No. 18-8369, 2019 WL 5281291 (U.S. Oct. 18, 2019); *Ball v. Hummel*, 577 F. App'x 96, 98 n.1 (3d Cir. 2014) (per curiam); *Pettus*, 554 F.3d at 297; *see also Vandiver*, 727 F.3d at 588 (declining to address the issue).

B.

Appellant's IFP Applications

One Circuit has fashioned a two-part test to flesh out this relationship. In *Pettus*, the Second Circuit reasoned, "The law of standing provides the most natural analogy for giving content to the nexus requirement because the statute identifies a particular injury-in-fact (i.e., the imminent danger of serious physical injury) that Congress singled out for special protection." 554 F.3d at 297–98. Thus, the court developed a test based on the lexicon used in a standing analysis. First, it deemed the alleged imminent danger of serious physical injury as analogous to an Article III injury-in-fact. Then, it explained, "In deciding whether . . . a nexus exists, we will consider (1) whether the [alleged] imminent

danger of serious physical injury . . . is fairly traceable to unlawful conduct asserted in the complaint and (2) whether a favorable judicial outcome would redress that injury." *Id.* at 298–99 (emphasis and footnote omitted). Only one other circuit has adopted this test, in an unpublished opinion. *See, e.g.*, *Lomax*, 754 F. App'x at 759.

Based on concessions by Appellant and Northam, we need not pass on the propriety of the Second Circuit's test in this matter. First, Appellant himself admits that the SSA Claim "does not relate to the danger the Appellant complains of." Appellant's Br. 43. We agree. The relief sought in the SSA Claim is a request for backpay and the administrative reopening of a prior SSA claim. It has no relationship at all to the alleged imminent danger of prison guards failing to protect Appellant from murder at the hands of a drug lord, and refusing to offer mental health services such that Appellant is in danger of committing suicide. Thus, because there is no nexus, the IFP application in 18-2312 must be denied. We express no opinion about the merits of the SSA Claim.

Second, in the Mandamus Action, Northam concedes that Appellant "has satisfied th[e] [nexus] requirement" and "should be permitted to proceed in No. 18-7417 without prepaying the appellate filing fee." Northam Br. 9. Therefore, we will grant Appellant's IFP application on the Mandamus Action, but we nonetheless affirm dismissal of that claim for the reasons stated by the district court pursuant to 28 U.S.C. § 1915A(b)(1). *See* J.A. 23–24 (dismissing Mandamus Action because it is frivolous and fails to state a cognizable § 1983 claim against Governor Northam).

13

III.

For these reasons, we deny Appellant IFP application in Case No. 18-2312. We grant Appellant's IFP application in Case No. 18-7417 but affirm dismissal of that action for the reasons stated by the district court.

*18-2312 – APPLICATION DENIED*
*18-7417 – APPLICATION GRANTED; AFFIRMED*

14