**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 20-6848**

———————

MARC PIERRE HALL,

          Plaintiff - Appellant,

     v.

UNITED STATES OF AMERICA,

          Defendant - Appellee.

———————

Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling.  John Preston Bailey, District Judge.  (5:20-cv-00092-JPB)

———————

Argued:  December 7, 2021                          Decided:  August 10, 2022

———————

Before GREGORY, Chief Judge, RICHARDSON, Circuit Judge, and Rossie D. ALSTON, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation.

———————

Vacated and remanded by published opinion.  Chief Judge Gregory wrote the opinion, in which Judge Alston joined.  Judge Richardson concurred in the judgment and wrote a concurring opinion.

———————

**ARGUED:**  Blaec C. Croft, MCGUIREWOODS LLP, Pittsburgh, Pennsylvania, for Appellant.  Erin K. Reisenweber, OFFICE OF THE UNITED STATES ATTORNEY, Martinsburg, West Virginia, for Appellee.  **ON BRIEF:**  Matthew A. Fitzgerald, MCGUIREWOODS LLP, Richmond, Virginia, for Appellant.  William J. Ihlenfeld, II, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.

———————

GREGORY, Chief Judge:

Hall is an inmate at United States Penitentiary ("USP") Hazelton who filed a *pro se* civil action in United States district court alleging violations under the Federal Tort Claims Act ("FTCA") for denied and delayed medical care of his chronic illnesses. Hall also filed a Motion for Leave to Proceed *in forma pauperis* ("IFP"). Following the Magistrate Judge's recommendation, the district court denied Hall's IFP motion on the grounds that he did not meet the "imminent danger of serious physical injury" exception. Hall now appeals to this court.

In this case, we clarify the proper standard for considering whether a petitioner meets the "imminent danger" exception in cases, such as here, where a petitioner is alleging denial or delayed medical treatment resulting in worsening medical conditions and serious physical injuries. Furthermore, we clarify that while a litigant bringing a claim under the Prison Litigation Reform Act ("PLRA") must show a nexus between the claims presented and the "imminent danger" alleged, there is no redressability element required to proceed IFP. Finally, since the district court did not have access to Hall's medical records and, thus, did not have a complete record to determine whether Hall satisfied the "imminent danger" exception based on our clarified standard, we remand for further proceedings consistent with this opinion.

## I.

Marc Pierre Hall is an inmate at USP Hazelton in Bruceton Mills, West Virginia. J.A. 1. On May 7, 2020, and pursuant to the PLRA, Hall filed a *pro se* civil action in U.S.

district court alleging four separate violations of the FTCA. Hall alleges that USP Hazelton is "actively delaying and denying him the appropriate medical treatment, resulting in an ongoing imminent danger of serious physical injury." Opening Br. 5 (citing J.A. 1–10). Specifically, Hall alleges that USP Hazelton has (1) denied "pulmonary, orthopedic, neurology, rheumatology and physiatry" services; (2) "lumbar surgery and physical therapy"; (3) denied proper standard of care to a prisoner with a history of intubation, asthma, and chronic obstructive pulmonary disease ("COPD"), causing a reduction in lung capacity and lung damage; and (4) erroneously instructed an employee to use the incorrect medical device for transporting Hall for medical care. J.A. 6–9.

Along with his federal complaint, Hall also filed a Motion for Leave to Proceed IFP. J.A. 70. On May 12, 2020, a Magistrate Judge issued a Report and Recommendation that Hall's complaint should be dismissed without prejudice and that his IFP motion should also be denied. J.A. 70–73. The Magistrate Judge noted that the PLRA, 28 U.S.C. § 1915(g), has a "three strikes" provision that precludes a plaintiff from filing a fourth complaint unless the litigant can meet an exception for "imminent danger of serious physical injury." The Magistrate Judge reasoned that because Hall had previously filed three civil complaints that were deemed frivolous, and because Hall failed to establish that he was under "imminent danger of serious physical injury," the PLRA required that the district court dismiss the complaint without prejudice. *See* J.A. at 70–71. Moreover, the Magistrate Judge reasoned that even if Hall was under imminent danger, relief under the FTCA is limited to money damages, "equitable relief is not available," and, thus, "allowing this case to proceed without prepayment of fees will not remove the plaintiff from 'imminent danger of serious physical

3

injury.'" J.A. 72 (citing 28 U.S.C. § 1915(g)). On May 19, 2020, Hall objected to the Magistrate Judge's Report and Recommendation. J.A. 75–82.

On May 29, 2020, the district court entered an order adopting the Report and Recommendation and dismissing Hall's complaint without prejudice. J.A. 83–88. The district court noted that Hall's complaint lacked "sufficient factual allegations to support a conclusion by the Court that Hall was under imminent danger of physical injury." Opening Br. 8 (citing J.A. 86). On June 9, 2020, Hall filed a timely notice of appeal to this court. J.A. 91.

## II.

We have jurisdiction to consider Hall's appeal pursuant to 28 U.S.C. § 1291. We review *de novo* questions of statutory interpretation. *Taylor v. Grubbs*, 930 F.3d 611 (4th Cir. 2019); *see also Tolbert v. Stevenson*, 635 F.3d 646, 649 (4th Cir. 2011) ("We review *de novo* the appropriate interpretation of § 1915(g)."). We also review *de novo* a district court's conclusion that a three-strikes litigant has not adequately alleged that he or she is in imminent danger of serious physical injury. *See Richey v. Dahne*, 807 F.3d 1202, 1206 (9th Cir. 2015).

## III.

### A.

We begin with the "imminent danger" exception to the "three strikes provision" of the PLRA which states in full:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action

4

> or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, *unless the prisoner is under imminent danger of serious physical injury*.

28 U.S.C.A. § 1915 (g) (emphasis added).  The goal of the PLRA was to address "a concern about the 'endless flood of frivolous litigation' brought by inmates." *McLean v. United States*, 566 F.3d 391, 397 (4th Cir. 2009) (quoting 141 Cong. Rec. S14, 418 (1995)), *abrogated on other grounds by Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1724–1725 (2020) (holding that the statute's language "applies to [dismissals] issued both with and without prejudice to a plaintiff's ability to reassert his claim in a later action").  With the PLRA, Congress targeted the "flood of nonmeritorious claims," even if such claims were not in any way abusive, because these claims were "effectively preclud[ing] consideration of" suits more likely to succeed." *Jones v. Bock*, 127 S. Ct. 910, 914 (2007).

"To accomplish its goal of reducing the number of frivolous lawsuits," Congress imposed on incarcerated persons, among other hurdles, the three-strikes limitation to proceeding IFP.  *Green v. Young*, 454 F.3d 405, 406–07 (4th Cir. 2006).  The Supreme Court has clarified that a claim is frivolous if and only if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 109 S. Ct. 1827, 1833 (1989).  We have adopted a similar standard.  *See Blakely v. Wards*, 738 F.3d 607, 613 (4th Cir. 2013), *as amended* (Oct. 22, 2013) (holding that a "summary judgment dismissal stating on its face that the dismissed action was frivolous, malicious, or failed to state a claim counts as a strike for purposes of the PLRA's three-strikes provision"); *Tolbert*, 635 F.3d at 651 (holding that

5

"§ 1915(g) requires that a prisoner's entire action or appeal be dismissed on enumerated grounds in order to count as a strike") (internal quotes omitted).

We have also clarified that "the statutory language dictates a high degree of deference to the discretion of district courts [and, thus, a] claim can be dismissed whenever a district court is satisfied the claim is frivolous." *Cochran v. Morris*, 73 F.3d 1310, 1316 (4th Cir. 1996) (internal quotes omitted).[1]  Though we clarified that "Congress vested in courts the authority to decide whether to grant *in forma pauperis* status," *Blakely*, 738 F.3d at 612, we left "for another day the question of what standard should apply in determining how such discretion should be exercised." *Id.* at n.2.  This is the question we answer today.[2]

---

[1] Similarly, our sister circuits have held that a frivolous action is one that is indisputably unsupportable in law or in fact. *See Wilson v. Yaklich*, 148 F.3d 596 (6th Cir. 1998), *reh'g and suggestion for reh'g en banc denied*, (July 27, 1998) and *cert. denied*, 119 S. Ct. 1028 (1999) (recognizing that not all meritless claims are "frivolous" and that the provisions of the PLRA should be used to dismiss an action only when the claim is "based on an indisputably meritless legal theory," or where a complaint's "factual contentions are clearly baseless," that is, "when the petitioner cannot make any claim with a rational or arguable basis in law or in fact"); *see also Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990) (citing *Williams v. Faulkner*, 837 F.2d 304, 307 (7th Cir. 1988), *aff'd by Neitzke*, 109 S. Ct. at 1833 (1989)) (holding that "an *in forma pauperis pro se* complaint may only be dismissed as frivolous . . . when the petitioner cannot make any claim with a rational or arguable basis in law or in fact").  Other courts have held that a claim is "frivolous" under the PLRA for purposes of barring a state prisoner from proceeding IFP in a civil action, if the factual contentions supporting the claim are clearly baseless or the claim is based on a legal theory that is indisputably meritless.  *See Barela v. Variz*, 36 F. Supp. 2d 1254 (S.D. Cal. 1999); *Castro v. Samuel*, 50 F. Supp. 3d 377 (E.D.N.Y. 2014) (holding the same).

[2] Sister circuits have addressed this question by holding that "[i]n deciding to revoke [a litigant's] IFP status, the Court considers 'the number, content, frequency, and disposition of [the litigant's] previous filings to determine if there is a pattern of abusing the IFP privilege in [the] litigation history.'" *Ruston v. U.S. Secret Service*, 751 F. Supp. 2d 59, 61 (D.D.C. 2010) (quoting *Butler v. Dep't of Justice*, 492 F.3d 440, 446 (D.C. Cir. (Continued)

B.

In the instant matter, it is undisputed that Hall had the requisite three dismissals required by § 1915(g). *See* J.A. 70–73 (citing *Hall v. City of Charlotte*, No. 3:97cv186 (GCM) (W.D.N.C. Aug. 29, 1997), (dismissing complaint as frivolous); *Hall v. City of Charlotte, N.C.*, 149 F.3d 1168 (4th Cir. 1998) (appeal dismissed as frivolous); *Hall v. United States*, No. 1:00-cv-987-UNA (D.D.C. May 5, 2000) (dismissing complaint with prejudice for failure to state a claim upon which relief may be granted); *Hall v. Chater*, No. 3:98cv1940 (JCH) (case dismissed as frivolous) (D. Conn. Jan. 28, 1999)). The district court held that Hall's complaint lacked sufficient factual allegations to support a conclusion that Hall was under imminent danger of physical injury. J.A. 71–72; 86. Therefore, the question before us is whether Hall showed that he was "in imminent danger of serious physical injury," at the time he filed his complaint, because of alleged denied or delayed medical treatment of his chronic illnesses.

1.

We begin by clarifying what standard district courts should apply in considering whether a petitioner faces "imminent danger of serious physical injury." District courts have broad discretion to consider the totality-of-the-circumstances, past and present, to determine whether an incarcerated person faces imminent serious injury at the time of filing because of denied or delayed medical care causing worsening medical conditions.

---

2007)); *see also In re Sindram*, 111 S. Ct. 596 (1991) (per curiam). Indeed, our court recently upheld a district court's use of these factors. *See In re Grenadier*, No. 1:18-MC-10-HEH, 2018 WL 3233648, at *9 (E.D. Va. July 2, 2018), *aff'd*, 753 F. App'x 178 (4th Cir. 2019).

The statute states that "[i]n no event shall a prisoner bring a civil action or appeal . . . unless the prisoner is under *imminent danger of serious physical injury*." 28 U.S.C. § 1915(g) (emphasis added). Here, the words "in no event" prohibit an incarcerated person from filing a complaint or appeal if they have already had three cases dismissed "on grounds that it is frivolous, malicious, or fails to state a claim." 28 U.S.C. § 1915(g). Thus, the words "in no event" are an absolute bar to filing suits under the PLRA. However, the language "unless he is in imminent danger of serious physical injury" is an exception to this prohibitive bar. So, the exception is triggered only if the incarcerated person alleges sufficient and specific facts establishing that he or she is in imminent danger of serious physical injury at the time of filing. *See Johnson v. Warner*, 200 F. App'x 270, 272 (4th Cir. 2006) (quoting *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003)) (holding that "vague, speculative, or conclusory allegations are insufficient to invoke the exception of § 1915(g); rather, the inmate must make 'specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury'").[3]

The plain reading of the statute requires that the "imminent danger" exist contemporaneously when the action is filed. *See Negonsott v. Samuels*, 113 S. Ct. 1119,

---

[3] In *Johnson*, for example, we found that the litigant satisfied the requirements for the exception because his complaint detailed "unprovoked assaults and resulting serious physical injuries" from 1999 to 2005. *Johnson*, 200 F. App'x at 272. Johnson alleged that he was threatened with "severe bodily injury or death upon his entry into 'supermax,'" and that he lived in "an atmosphere of constant fear in which he never kn[ew] when the next violent assault may occur." *Id.* *Johnson* suggests that a court may consider past and ongoing acts of violence that place an incarcerated person in imminent danger.

8

1122–23 (1993) ("Our task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive.") (quoting *Griffin v. Oceanic Contractors, Inc.*, 102 S. Ct. 3245, 3250 (1982)). That is, someone whose danger has passed cannot reasonably be described as someone who "is" in "imminent" danger. Nevertheless, past danger or past threats of danger may be considered in evaluating whether the danger is imminent at the time of filing. Still, past allegations of danger or threats of harm *on their own* are insufficient to satisfy the exception. *See Chase v. O'Malley*, 466 F. App'x 185, 186 (4th Cir. 2012) (per curiam) (citing *Martin*, 319 F.3d at 1050) (holding that "[t]he requisite imminent danger of serious physical injury must exist at the time the complaint [or appeal] or the risk that the conduct complained of threatens continuing or future injury, not on whether the inmate deserves a remedy for past misconduct") (internal quotation marks omitted).

We have also clarified that if there is a pattern of past conduct that places an incarcerated person in imminent danger of harm, and which is ongoing, then the litigant meets the exception. In *Newkirk v. Kiser*, for example, we reversed the district court's denial of Newkirk's IFP because he had adequately described a pattern "that prison staff members regularly assault inmates without cause and threaten inmates who complain" and detailed how prison staff members had assaulted him. *Newkirk*, 812 F. App'x 159, 160 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1087 (2021). The *Newkirk* court held that "a prisoner who alleges that prison officials *continue with a practice* that has injured him or others similarly situated in the past will satisfy the 'ongoing danger' standard and meet the imminence prong of the three-strikes exception." *Id.* at 160 (emphasis added). Thus,

9

*Newkirk* established "'a pattern of misconduct evidencing the likelihood of imminent serious physical injury.'" *Id.* (quoting *Martin*, 319 F.3d at 1050). The *Newkirk* court also clarified that "'[t]he exception *focuses on the risk* that the conduct complained of threatens continuing or future injury, not on whether the inmate deserves a remedy for past misconduct.'" *Id.* (emphasis added) (quoting *Martin*, 319 F.3d at 1050); *see also Andrews v. Cervantes*, 493 F.3d 1047, 1056–57 (9th Cir. 2007) (holding that "a prisoner who alleges that prison officials continue with a practice that has injured him or others similarly situated in the past will satisfy the 'ongoing danger' standard and meet the imminence prong of the three-strikes exception").[4]

In all, district courts have broad discretion to consider all the factual allegations, whether past or present, which support finding that the petitioner is in "imminent danger" at the time of their filing. *See Newkirk*, 812 F. App'x at 159 (emphasis added) (quoting *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003) (clarifying that to satisfy the

---

[4] Our reading that the "imminent danger" must exist at the time of filing is consistent with the DC, Third, Fifth, Eighth, and Eleventh Circuits. *See e.g.*, *Pinson v. United States Dep't of Just.*, 964 F.3d 65, 69 (D.C. Cir. 2020) ("[P]risoner-litigants must show that they faced imminent danger when they noticed their appeals."); *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 313 (3d Cir. 2001) ("[T]he exception is cast in the present tense, not in the past tense, and the word 'is' in the exception refers back to the same point in time as the first clause, i.e., the time of filing. The statute contemplates that the 'imminent danger' will exist contemporaneously with the bringing of the action."); s*ee also Banos v. O'Guin*, 144 F.3d 883, 885 (5th Cir.1998) ("[T]he language of § 1915(g), by using the present tense, clearly refers to the time when the action or appeal is filed or the motion for IFP status is made."); *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003) (holding that "[t]he exception focuses on the risk that the conduct complained of threatens continuing or future injury, not on whether the inmate deserves a remedy for past misconduct"); *Medberry v. Butler*, 185 F.3d 1189, 1193 (11th Cir. 1999) ("Congress' use of the present tense in § 1915(g) confirms that a prisoner's allegation that he faced imminent danger sometime in the past is an insufficient basis to allow him to proceed in forma pauperis . . . .").

imminent danger criterion, a prisoner must show that the danger "'*exist[ed] at the time* the complaint or the appeal [wa]s filed, not when the alleged wrongdoing occurred.'"); *Meyers v. Comm'r of Soc. Sec. Admin.*, 801 F. App'x 90, 95 (4th Cir. Jan. 28, 2020) (emphasis added) (quoting BLACK'S LAW DICTIONARY (11th ed. 2019)) (clarifying that "'imminent' means 'threatening to occur *immediately; dangerously impending'* or *'[a]bout to take place'*"); *Meyers*, 801 F. App'x. at 96 ("Thus, Congress intended that a three-strikes prisoner have opportunity to ask the court for its aid in addressing a danger that is close at hand, not a past infraction.").[5]

### 2.

Next, we turn to consider whether an incarcerated person's allegations that prison officials have denied or delayed his or her medical treatment resulting in worsening medical conditions are sufficient to constitute an "imminent danger of future serious physical injury." While we do not set a bright line rule, we outline some parameters.

On one end of the spectrum, we have previously held that there is no "imminent danger to serious physical injury" when prison officials deny medication to an incarcerated

---

[5] While Congress did not define "serious physical injury," Merriam-Webster's Dictionary of Law defines "injury" as:

an act that wrongs or harms another specifically: a violation of a legally protected interest (as the physical or mental well-being, property, reputation, or rights of another) for which the law allows an action for legal or equitable relief;

hurt, damage, or loss sustained

Merriam-Webster's Dictionary of Law, *Injury*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/injury (last visited Feb. 18, 2022).

person who failed to demonstrate that the medication was necessary. *See Richardson v. Hite*, 53 F. App'x 291, 292 (4th Cir. 2002) (finding no "imminent danger" in allegation that inmate was being denied medication for his elevated cholesterol levels where inmate did not demonstrate that his cholesterol levels were necessarily dangerous or that medication was a medical necessity); *see also Gresham v. Meden*, 938 F.3d 847, 850 (6th Cir. 2019) (explaining that temporary conditions that cause discomfort and pain and are unlikely to "lead to impending death or other severe bodily harms" do not satisfy the imminent-danger exception). Thus, to show that the threat or danger of serious physical injury is imminent, a petitioner must at least allege that the medical treatment is *necessary* for their medical condition(s).

On the other end of the spectrum, a petitioner is in "imminent danger of serous physical injury" when he or she is delayed or denied treatment resulting in life-threatening medical issues or serious injuries. Our sister circuits have held similarly.[6]

Today we are faced with a thorny question of whether the denial and/or delay of medical treatment, which allegedly causes *worsening*, *and possibly life-altering*, serious

---

[6] *See, e.g.*, *Brown v. Wolf*, 705 F. App'x 63, 66 (3d Cir. 2017) (holding that plaintiff's allegations "that he has been denied information to allow him to make an informed decision, coupled with his allegations of serious medical issues [stemming from prostate cancer], facially show that he was at imminent risk of serious physical injury at the time he filed the complaint"); *Andrews v. Cervantes*, 493 F.3d 1047, 1056-57 (9th Cir. 2007) (holding that the prison's ongoing practice of placing Andrews amongst enemy inmates with serious contagious diseases, which had resulted in Andrews being infected with tuberculosis, satisfied the imminent danger standard); *Brown v. Johnson*, 387 F.3d 1344, 1350 (11th Cir. 2004) (overturning the district court's denial of IFP status to an inmate who claimed the prison officials had fully withdrawn HIV and Hepatitis treatment, causing the rapid deterioration of his condition and severe ongoing complications).

12

injuries is sufficient to trigger the exception.  Here, the Sixth Circuit's reasoning articulated in *Vandiver* is most instructive.  *Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 588 (6th Cir. 2013) (holding that an incarcerated person who had been diagnosed with diabetes and Hepatitis C, and previously been partially amputated, satisfied the exception because he made detailed allegations showing a present danger of serious injury which included further partial amputations, coma and death caused by a failure to receive necessary treatment).  In *Vandiver*, the Sixth Circuit rejected the notion that:

> The inclusion of the word 'imminent' in § 1915(g) allows us to grant IFP status only after a plaintiff's condition has deteriorated such that the next instance of maltreatment would result in a serious physical injury.  *Imposing such a restriction would ignore the progressive and worsening nature of injuries often associated with chronic illness and would result in unnecessary suffering by those afflicted with these conditions.*  We thus believe that for the purposes of § 1915(g), an individual afflicted with a chronic illness that left untreated would result in serious injury faces imminent danger when the illness is left untreated.

*Vandiver*, 727 F.3d at 587 (emphasis added).  Thus, delayed or denied medical treatment that worsens a petitioner's medical conditions resulting in serious physical injuries would be sufficient to trigger the exception.  Indeed, the PLRA does not require that the litigant show that he or she is facing life-threatening injuries at the time of filing.  Rather, the PLRA only requires that the litigant show that he or she is facing "an imminent danger of a '*serious physical injury*' to him."  *Ryan v. G. Robert Cotton Corr. Facility*, No. 20-1305, 2020 WL 9258300, at *3 (6th Cir. Dec. 8, 2020) (quoting 28 U.S.C. § 1915(g)) (emphasis added); *see also Gresham v. Meden*, 938 F.3d 847, 850 (6th Cir. 2019) ("A physical injury is 'serious' for purposes of § 1915(g) if it has potentially dangerous consequences such as death *or severe bodily harm*." (emphasis added)).  Thus, if an incarcerated person

13

sufficiently alleges that he or she has been continually denied necessary medical care which has worsened their chronic conditions and, as a result, they are experiencing serious physical injuries, or severe bodily harm, then a district court need not wait until the petitioner is facing immediate life-threatening injuries to allow him or her to proceed IFP. *See, e.g.*, *Smith v. Ray*, 590 F. App'x 232 (4th Cir. 2015) (holding that a petitioner who "alleged that he is suffering from chest pain and heart palpitations, and has been coughing up blood on a daily basis since December 2013 [, and] further asserted that prison officials have refused to treat him for these issues despite his complaints[,…] support a conclusion that Smith is under imminent danger of serious physical injury"). Though a petitioner who alleges past and ongoing denied or delayed medical treatment may not have documented serious physical injuries, because prison officials have refused to provide the requisite medical care, the district court may exercise its discretion to determine whether there are sufficient factual allegations and evidence of severe physical harm or injury, or a risk of such harm is imminent because of worsening chronic conditions. *See, e.g.*, *Ryan*, 2020 WL 9258300, at *2 (holding that an inmate who was refused medical treatment of his other chronic conditions because only urgent or emergency appointments were being taken still triggered the exception). To be sure, a district court is also within its discretion to dismiss allegations of imminent harm or injury because of delayed or denied medical care if such allegations are wholly conclusory and lack some basis in the record or complaint.

3.

In the case at bar, Hall alleges that the ongoing denial and delay of medical treatment has continued to impact his health, resulting in the danger of physical harm. J.A. 69. Hall

14

points to his medical records which indicate that his chronic conditions appear to be worsening and may be life-altering. For example, he notes that though his injuries are not yet imminently life-threatening, he has experienced an ongoing loss in lung capacity, limited mobility, and has a possibly cancerous nodule in his lungs that may be increasing in size. J.A. 13–16. Specifically, Hall alleges that the Government has failed to provide the requisite standard of care to treat him for chronic asthma and COPD, associated with a reduction in lung capacity, along with a material delay in providing care enabling him to have lumbar surgery, resulting in a continuation of these injuries and increasing the risk of imminent danger of serious physical injury. J.A. at 6–8, 11–15. In support of his claim, Hall alleges that he is suffering from:

> numerous chronic conditions, e.g.: (1) chronic persistent asthma; (2) chronic COPD; (3) lung capacity depletion to 49% without medication and between 58% to 65% capacity response with medicines; (4) history of intubation; (5) a 7mm solitary pulmonary nodule without testing and possibly cancerous-right lower lung; (6) bronchial wall thickening; (7) lung scaring at bases; (8) chronic rheumatory arthritis; (9) muscle deterioration in low back and hips; (10) ligament damage right knee meniscus tears; (11) right knee loss of rom-8%; (12) gait; (13) chronic lumber spondylosis and stenosis; (14) degenerative disc disease; (15) spinal nerve partial compression; (16) right leg bone edema; (18) high blood pressure; (19) poor heart voltage; requiring access to outside services not available at USP Hazelton; WV. For consults of: pulmonary, rheumatology; neurology; physiatry; orthopedic; cardiology; and physical therapy.

J.A. 11–12. Hall then alleges that although he was originally seen by Dr. Adams for an initial visit on May 17, 2018, he did not receive additional medical appointments. J.A. 12. In combination with the understaffing at USP Hazelton, Hall alleges there have been "repeated appointment cancelations for years that effectively denied medical rights, causing worsening physical conditions." J.A. 12. Specifically, Hall alleges that he has

15

experienced a "worsening physical condition of [his] lungs" and that his "medical records have been falsified by medical staff . . . that have caused Hall not to be properly examined . . . and caused worsening physical injuries." J.A. 12.

In his affidavit for administrative proceedings within the U.S. Department of Justice Bureau of Prisons ("BOP"), Hall declared that the denial of medical treatment resulted in the following worsening medical issues:

1) Worsening conditions of persistent asthma and COPD;

2) Worsening conditions of SOB (shortness of breath);

3) Worsening lung capacity;

4) Right Lung 7mm nodule growth;

5) Worsening nerve injuries either compress or in part; stretched or displaced persistent chronic pain;

6) Worsening and deteriorating lumbar disc L4, L5, Si stenosis and persistent chronic pain;

7) Worsening loss of muscles low back and persistent chronic pain;

8) Worsening persistent chronic scadic (sic) nerve pain;

9) Worsening persistent weakness and numbness of hands; legs and feet;

10) Worsening degenerative disc stenosis and persistent chronic pain;

11) Worsening chronic persistent pain of neck and shoulders and weakness;

12) Worsening and persistent chronic pain of herniated disc;

16

13) Worsening and limited ambulation and balance and more frequent falls;

14) Worsening bed mobility and persistent chronic pain;

15) Worsening continence control of bowel and urine;

16) Worsening migraines persistent chronic pain up to a week;

17) Worsening erection dysfunction;

18) Loss of life activities or worsening limitations of sports;

19) Worsening arthritis and persistent chronic pain in all joints;

20) Worsening meniscus tears right knee with persistent chronic pain;

21) Worsening deterioration of hip muscles and arthritis and persistent chronic pain;

22) Bone edema right leg persistent chronic pain;

23) Worsening reduced sight blurriness and sensitivity to light and persistent pain;

24) Worsening heart voltage and persistent pain;

25) Worsening gait and persistent chronic pain;

26) Worsening chronic allegories contributing to respiratory diseases and facial pain;

27) Worsening persistent chronic pain in soles of feet;

28) Worsening persistent chronic pain in legs, shooting pain;

29) Worsening persistent chronic pain in arms;

30) Worsening persistent chronic pain in groin and waist;

31)     Depletion of life span.

J.A. 65–67.

In response, the Government argues that Hall failed to plead sufficient specific facts to establish that he was in imminent danger because of an alleged lack of medical treatment. Both the Magistrate Judge, J.A. 70–73, and district court agreed, J.A. 86.

Again, we clarify that there would be an "imminent danger to serious physical harm" in cases where there is "incremental harm that culminates in a serious physical injury [that] present[s] a danger equal to harm that results from an injury that occurs all at once." *Vandiver*, 727 F.3d at 587. That is, in cases where a petitioner alleges worsening medical conditions and serious physical injury because of delayed and/or denied medical treatment, the district court must determine whether these allegations are supported by the record and whether they rise to the level of imminent danger, even if the alleged harm has occurred over time and not all at once. In our case, because the district court did not have access to Hall's medical records, it did not have the full record to determine whether the denial and delay of his medical treatment present an imminent danger of serious physical injury. So, we remand for its reconsideration.[7]

## C.

As another ground for denial, the district court held that "plaintiff is proceeding under the FTCA, and accordingly, relief is limited to money damages; equitable relief is

---

[7] Although the district court did not have access to Hall's medical records, they were filed for appellate review, and we note that they show a litany of medical issues including a possibly cancerous nodule in Hall's lung resulting in diminished lung capacity. *See* Mot. II (ECF No. 5). Mot. II at 1–2, 4–7, 10–19, 21–22.

not available under the FTCA." J.A. 87 (citing *Talbert v. United States*, 932 F.2d 1064, 1065–66 (4th Cir. 1991)). Therefore, the district court held that "allowing this case to proceed without prepayment of fees will not remove the plaintiff from 'imminent danger of serious physical injury.'" *Id.*

Accordingly, the final issue is whether an applicant proceeding IFP, in conjunction with the imminent danger of serious physical injury exception in the PLRA, must also demonstrate that a favorable judicial outcome would redress the alleged imminent danger of a serious physical injury to proceed. We hold that while there is a nexus requirement, there is no redressability requirement.

1.

The FTCA contains a general waiver of sovereign immunity. *See* 28 U.S.C. §§ 1346(b), 2674 (1988). Section 1346(b) directs that "the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government . . . ." We have clarified that "the only relief provided for in the Act is 'money damages.'" *Talbert*, 932 F.2d at 1065–66 (quoting *Birnbaum v. United States*, 588 F.2d 319, 335 (2d Cir. 1978)).

As detailed above, Congress enacted the PLRA to deter incarcerated people from filing frivolous lawsuits which were clogging up and burdening federal courts. *See* 141 Cong. Rec. S14408–01, S14413 (daily ed. Sept. 27, 1995) (statement of Sen. Dole) (explaining that the number of prisoner suits filed "has grown astronomically—from 6,600 in 1975 to more than 39,000 in 1994"); *see also id.* ("The crushing burden of these frivolous

19

suits makes it difficult for courts to consider meritorious claims."); 141 Cong. Rec. S7526 (daily ed. May 25, 1995) (statement of Sen. Jon Kyl) (noting that frivolous suits were "draining precious judicial resources" and that § 1915(g) would "free up judicial resources for claims with merit by both prisoners and nonprisoners").  Though Congress did not prohibit an incarcerated person from filing a civil suit on any ground, Congress made it more difficult for frequent filers to proceed with IFP status unless they met the "imminent danger" exception.  *Roller v. Gunn*, 107 F.3d 227, 231 (4th Cir. 1997) (clarifying that "Congress is no more compelled to guarantee free access to federal courts than it is to provide unlimited access to them" and reasoning that "[t]he Supreme Court has never recognized an 'unlimited rule that an indigent at all times and in all cases has the right to relief without the payment of fees'") (quoting *United States v. Kras*, 93 S. Ct. 631, 640 (1973)).  Therefore, because Congress articulated a legitimate government interest to prevent frivolous lawsuits and set a requirement that petitioners establish that they face "imminent danger" to proceed as IFP status, it would make little sense to "conclude that with one hand Congress intended to enact a statutory rule that would reduce the huge volume of prisoner litigation, but, with the other hand, it engrafted an open-ended exception that would eviscerate the rule." *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 315 (3d Cir. 2001); *see also Pinson*, 964 F.3d at 71 (reasoning the same).

A plain reading of the statute requires that litigants allege sufficient specific facts to demonstrate a nexus between the claims presented and the imminent danger alleged. *See King v. Burwell*, 135 S. Ct. 2480, 2496 (2015) ("A fair reading of legislation demands a fair understanding of the legislative plan.").  This is consistent with a general requirement

20

that vague and conclusory assertions are insufficient to meet the "imminent danger" exception. *See White v. Colorado*, 157 F.3d 1226, 1231 (10th Cir. 1998) (clarifying that "vague and utterly conclusory assertions" are insufficient but "credible, uncontroverted allegations of physical threats and attacks" are sufficient). Indeed, because the "imminent danger" exception to the PLRA was intended to be a "safety valve" to the three strikes provision, petitioner's must sufficiently allege a connection between the "imminent danger" they are facing and claims in their complaint to allow the district court to grant IFP status. *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 315 (3d Cir. 2001) ("By using the term 'imminent,' Congress indicated that it wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those harms that had already occurred.").[8]

In our case, both parties agree that it is a "commonsense requirement that a prisoner's allegation of imminent danger must relate to their underlying claims." Opening Br. 16. Moreover, the Government concedes that "a fairly traceable relationship exists between Hall's alleged imminent danger and the claims set forth in his FTCA complaint, as they both arise from his allegations of delay and denial of medical treatment." Resp. Br.

---

[8] District courts in our circuit routinely examine whether a petitioner's claim is connected to the allegation that he or she is in "imminent danger" to allow the petitioner to proceed as IFP status. *See, e.g.*, *Merriweather v. Reynolds*, 586 F. Supp. 2d 548, 552 (D.S.C. 2008) (holding that a litigant's allegations of serious retaliation, continuous threats on his life, that he is in danger from prison gangs, and that prison personnel have threatened to put him in a pink jumpsuit, were insufficient, vague, and speculative to establish an imminent danger of physical harm under § 1915(g)); *Feather-Gorbey v. Vest*, No. 5:21-CV-00354, 2021 WL 2932738, at *2 (S.D.W. Va. July 12, 2021) (denying petitioner's motion to proceed IFP because petitioner's claims "allegations simply do not demonstrate a serious physical injury or a threat of serious physical injury."); *Gould v. United States*, No. 3:20-CV-00167-MR, 2020 WL 4938442, at *2 (W.D.N.C. Aug. 24, 2020), *appeal dismissed*, No. 20-7314, 2020 WL 8679674 (4th Cir. Dec. 21, 2020).

21

20. Hall has passed this threshold because he alleged that the prison's continued denial and delay in providing medical treatment are directly causing his worsening physical and medical conditions which present an imminent danger of serious physical injury. *See Ibrahim v. District of Columbia*, 463 F.3d 3, 7 (D.C. Cir. 2006) ("Without adequate treatment, [he] will continue to suffer additional harm, if not death," which "surely is sufficient to constitute imminent danger." (internal quotation marks omitted)).

2.

Both parties disagree, however, on whether the PLRA requires that the petitioner show as part of the nexus requirement that the court can redress their claim(s) to proceed as IFP status. Neither the plain language of the PLRA nor the Congressional intent point to such a redressability requirement. *Cf. Pettus v. Morgenthau*, 554 F.3d 293, 298–99 (2d Cir. 2009) (holding that "[i]n deciding whether such a nexus exists we will consider whether the imminent danger of serious physical injury that a three-strikes litigant alleges is *fairly traceable* to unlawful conduct asserted in the complaint and (2) whether a favorable judicial outcome would *redress* that injury"). Because the purpose of the PLRA is to screen out frivolous filers unless they meet the "imminent danger" exception, we do not read an additional redressability requirement in the statute. Indeed, such a requirement is contrary to Congressional intent and a plain reading of the statute.[9]

---

[9] Though the statute does reference to "fail[ure] to state a claim upon which relief may be granted," § 1915 (g), this pertains to the "3 or more prior" frivolous lawsuits that the petitioner had previously filed which are used to establish the bar to filling additional suits. The language following "unless the prisoner is under imminent danger of serious physical injury [,]" § 1915 (g), does not have any qualifying language requiring the district (Continued)

In determining whether there is an "imminent danger of serious physical injury," the court must focus on whether the alleged injury exists at the time of filing and not on whether the petitioner will be ultimately meritorious on the substance of their lawsuit. As our sister circuits have acknowledged, this inquiry is a "threshold procedural question" that does not require the district court to "make an overly detailed inquiry into whether the allegations qualify for the exception." *Andrews, v. Cervantes*, 493 F.3d 1047, 1055 (9th Cir. 2007); *see also Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) ("[Section] 1915(g) is not a vehicle for determining the merits of a claim . . . . [T]o fine-tune what is 'serious enough' to qualify for the exception . . . would result in a complicated set of rules about what conditions are serious enough, all for a simple statutory provision governing when a prisoner must pay the filing fee for his claim."). Accordingly, requiring that litigants establish that the court can redress their alleged "imminent danger of serious physical injury" would require examining the severity of the alleged injury and sufficiency of the relief sought—an examination of the merits of the case.

Of course, district courts must still examine whether it can redress the injury alleged as part of its usual Article III standing analysis. *See Horne v. Flores*, 129 S. Ct. 2579, 2592 (2009) ("To establish standing, a plaintiff must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged action; and redressable by a favorable ruling.") (citing *Lujan v. Defenders of Wildlife*, 112

court to examine whether it can provide relief to cure the alleged imminent danger of serious physical injury.

23

S. Ct. 2130, 2130 (1992)). However, as a threshold procedural matter, the PLRA does not require an incarcerated person to establish redressability to proceed as IFP status.

Still, the Government points out that we adopted the two-part *Pettus* test in *Meyers*, an unpublished opinion, where we held that "the better reading of the Imminent Danger Provision is that it requires a relationship between the imminent danger alleged in the IFP application and the facts alleged, and relief sought in the underlying claim." *Meyers*, 801 F. App'x at 95. *Meyers* also clarified that "the allegations of imminent danger in the IFP application must have some nexus or relation to those of the underlying complaint." *Id.* at 96.[10] While the *Meyers* court found support for the requirement that imminent danger alleged must be connected to the claims in the complaint, the *Meyers* court did not adopt the two-step test articulated in *Pettus*. Rather, the *Meyers* court discussed *Pettus* and noted that only one other sister circuit had adopted the test in another unpublished opinion. *See Lomax v. Ortiz-Marquez*, 754 F. App'x 756, 759 (10th Cir. 2018), *cert. granted on other grounds*, 140 S.Ct. 428 (2019). Ultimately, the *Meyers* court did not adopt the two-step *Pettus* test because the facts in that case did not require it to do so. *Meyers*, 801 F. App'x at 96. Therefore, we are not bound to follow *Meyers*.[11] Because the statute does not require

---

[10] The panel pointed to sister circuits who have held similarly. *Ball v. Hummel*, 577 F. App'x 96, 98 n.1 (3d Cir. 2014) (per curiam); *Pettus*, 554 F.3d at 297 (holding "that the statute requires that the prisoner's complaint seeks to redress an imminent danger of serious physical injury and that this danger must be fairly traceable to a violation of law alleged in the complaint"); *cf. Vandiver*, 727 F.3d at 588 (declining to address the issue).

[11] Pursuant to our Local Rule 36(c), we do not accord precedential value to our unpublished decisions. Unpublished decisions are not binding, and they are "entitled only to the weight they generate by the persuasiveness of their reasoning." *Hupman v. Cook*, 640 F.2d 497, 501 & n. 7 (4th Cir. 1981).

24

that the litigant show that they are likely to receive a favorable judicial outcome to proceed under the "imminent danger of serious physical injury" exception, we need not examine whether Hall met this element.

## IV.

In all, we remand the case for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

RICHARDSON, Circuit Judge, concurring in the judgment:

Marc Pierre Hall, an inmate at the United States Penitentiary Hazelton in West Virginia, alleges that the United States has delayed providing and at times denied him necessary medical treatment, endangering his life. He sued the United States under the Federal Tort Claims Act, which permits suits against the federal government for monetary damages, but not for injunctive relief. Hall wishes to proceed *in forma pauperis* (i.e., without paying the standard up-front filing fee). But Hall has already filed three meritless lawsuits, so under the Prison Litigation Reform Act he may not proceed *in forma pauperis* unless he is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). The United States argues that Hall's complaint fails to allege adequate facts showing that he is in any such danger, and that even if it did, a damages suit for past misconduct cannot satisfy the imminent-danger exception because the exception applies only when a prisoner is seeking an injunction to remedy (or "redress") some ongoing danger.

I agree with the majority that there is no redressability requirement for the imminent-danger exception; no such requirement appears in the text of § 1915(g), and we should not impose one. Yet I disagree that the imminent-danger exception is necessarily satisfied where "the incarcerated person alleges sufficient and specific facts establishing" an imminent danger. Maj. Op. 8. In my view, the imminent-danger exception imposes a substantive requirement that the plaintiff actually be in danger at the initiation of the suit— a factual question that may be informed by evidence provided by either party.

Here, Hall alleged deliberate indifference to several medical conditions. Only one of those—the possibly cancerous growth on his lung—would constitute an imminent

26

danger if Hall's allegations of nontreatment were merely accepted as true. But medical records submitted by Hall to this court suggest that he may be receiving adequate treatment for that nodule. So, because § 1915(g) is a substantive requirement and not a pleading standard, I agree that the decision of the district court must be vacated, but I would remand the case for consideration of whether record evidence reveals that imminent danger existed at the time of filing.

## I.    Background

Marc Pierre Hall is a federal prisoner. Hall filed a negligence suit under the Federal Tort Claims Act[1] and sought to proceed *in forma pauperis* because he could not afford the usual up-front filing fee. He allegedly suffers from a slew of medical conditions, including various back and spinal issues, joint problems, migraines, balance and mobility concerns, difficulty breathing, lung damage, and a possibly cancerous nodule. Hall claims that prison officials have contributed to the onset and worsening of many of these issues by their "excessive delay of access to outside services." J.A. 6. He also asserts that treating medical staff authorized consultations with outside specialists but that those consultations were either never scheduled or were cancelled. And he alleges an unreasonable delay in transferring him to a medical referral center, arguing he was entitled to such transfer under the Bureau of Prison's policies as a prisoner with a history of intubations and lung capacity below 50%. Further, he alleges that he was denied his annual chronic care visit but that

---

[1] The Federal Tort Claims Act "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001) (citing 28 U.S.C. § 1346(b)).

records were falsified to suggest that the visit had occurred.  And he alleges that "a possible cancerous 7 mm nodule was found in [his] Lower right lung with no testing or pulmonary consult scheduled."  J.A. 12.  Finally, he alleges delays and deprivations of physical therapy related to back and knee problems.

Hall is a frequent litigant in the federal courts.  He has filed dozens of lawsuits in 16 districts, with prior appeals to the Third, Fourth, Fifth, Ninth, Tenth, Eleventh, and D.C. Circuits.  So unsurprisingly, he is subject to the so-called three-strikes rule in § 1915(g).[2] But he argues that he qualifies for the exception for prisoners "under imminent danger of serious physical injury."  § 1915(g).

The magistrate judge below concluded that the imminent-danger exception did not apply because Hall could recover only money damages under the Federal Tort Claims Act; thus, "allowing this case to proceed without prepayment of fees will not remove the plaintiff from 'imminent danger of serious physical injury.'"  J.A. 72.  Hall objected, arguing that (1) the imminent-danger exception in § 1915(g) does not require that a favorable judgment mitigate the danger; and (2) even if it did, a monetary judgment against the government would deter future negligence.  The district court rejected Hall's objections and adopted the magistrate's recommendation, while also finding that "Plaintiff's Complaint lacks enough factual allegations for this Court to plausibly conclude that

---

[2] "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."  § 1915(g).

plaintiff is under imminent danger of serious physical injury." J.A. 86. The court thus denied Hall leave to proceed *in forma pauperis* and dismissed his complaint without prejudice. Hall timely appealed *pro se*.[3]

In support of his appeal, Hall moved to enter his medical records. The records, which he attached to that motion, appear to support some aspects of his allegations but undermine others. For example, they show that Hall has a 6–8 mm nodule on his lower right lung, COPD, 50% lung capacity, and persistent knee and back issues. However, they also show that consultations were scheduled, although Hall's notation on the documents claims that these were not performed. Perhaps most relevant, the records reveal that physicians performed a follow-up to monitor the progression of the lung nodule, which appeared to be stable.

## II.    Discussion

When someone wishes to sue but cannot afford the associated filing fee, federal law permits him to proceed *in forma pauperis* (in the manner of a pauper), filing the suit without paying the fee. § 1915. But that gratuity is not unlimited. The Prison Litigation Reform Act ("PLRA") commands that a prisoner-plaintiff may not proceed *in forma pauperis* "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be

---

[3] Because a dismissal without prejudice due to nonpayment of the filing fee cannot be cured by amendment, it is a final judgment and this court has jurisdiction. *See* 28 U.S.C. § 1291; *Domino Sugar Corp. v. Sugar Workers Loc. Union 392*, 10 F.3d 1064, 1066–67 (4th Cir. 1993).

granted." 28 U.S.C. § 1915(g). This "three-strikes" rule seeks to reduce vexatious and frivolous litigation by prisoners who, with little but time on their hands, have nothing to lose and much to gain from filing free lawsuits. *See Blakely v. Wards*, 738 F.3d 607, 609 (4th Cir. 2013) (en banc).

All parties agree that Hall, a prolific filer of meritless lawsuits, easily falls under the three-strikes rule. But the rule has an exception: A prisoner may sue *in forma pauperis* despite three prior frivolous suits if he is "under imminent danger of serious physical injury." § 1915(g). This appeal asks the court to resolve two questions about that exception. First, does the exception include an implicit "redressability" element requiring that the suit seek injunctive relief that would mitigate the imminent danger? Second, does Hall's complaint adequately plead facts that, if accepted as true, establish an imminent danger of serious physical injury?

I would hold that there is no redressability requirement (albeit for slightly different reasons than the majority). I would also hold that that the imminent-danger requirement is a substantive requirement, not a pleading requirement. So although Hall's complaint may allege an imminent danger based on the 6–8 mm nodule, those allegations may be rebutted by contradictory evidence. Thus, I would remand for the district court to determine whether the available evidence, including the medical records submitted by Hall, contradict his allegation that the prison failed to monitor the progression of the nodule.

**A.      There is no redressability requirement**

This court reviews questions of statutory interpretation de novo. *Stone v. Instrumentation Lab'y Co.*, 591 F.3d 239, 242–43 (4th Cir. 2009). And when interpreting

30

statutes, courts begin with the text's plain meaning. *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004). In so doing, courts must presume that Congress "says in a statute what it means and means in a statute what it says." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992). Accordingly, when a statute's text is unambiguous, the "judicial inquiry is complete," *Rubin v. United States*, 449 U.S. 424, 430 (1981), and all that remains is to give effect to that unambiguous language.

> Accordingly, I begin—and end—my analysis with the text:
>
> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, *unless the prisoner is under imminent danger of serious physical injury*.

§ 1915(g) (emphasis added). The text lays out a single predicate to its three-strikes-rule exception: The prisoner must be "under imminent danger of serious physical injury." § 1915(g). That's all. The statute imposes no requirement that the prisoner's lawsuit be brought to redress the danger. Nor is there any ambiguity into which one might read such a requirement. Because the text is clear, its plain meaning controls. Thus, there is no redressability requirement in § 1915(g).

With no textual basis for a redressability requirement, the government requests that we read one into the statute based on its purpose. After all, they say, the last phrase in § 1915(g) sought to provide a narrow exception to the three-strikes rule—a "safety valve" providing relief from the harshness of that rule only if such relief is necessary to avoid some looming danger. By extending the exception beyond cases brought specifically to

31

redress an imminent danger, the government argues we risk turning that safety valve into a floodgate of frivolous *in forma pauperis* damages actions.

To be fair, the government's position finds support in some other circuits. For instance, in *Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009), the Second Circuit imposed exactly the redressability requirement the government seeks here, as part of a larger "nexus" requirement between the alleged harms and the claim brought. The amicus in support of the plaintiff in *Pettus* argued that, to proceed *in forma pauperis* under § 1915(g), a plaintiff-prisoner need only allege that he is in imminent danger, not that his suit was related in any way to that danger. *Id.* at 296–97. The Second Circuit rejected that position as an unsustainable hyper-literal interpretation that ignored "the exception's place in the overall statutory framework." *Id.* at 297. In context, the court reasoned, it was clear that the statute's goal was to create "a *safety valve* for the 'three strikes' rule." *Id.* (quoting *Malik v. McGinnis*, 293 F.3d 559, 563 (2d Cir. 2002)). "Its unmistakable purpose is to permit an indigent three-strikes prisoner to proceed [*in forma pauperis*] in order to obtain a judicial remedy for an imminent danger." *Id.* To allow a prisoner to bring a suit unrelated to that danger would, in the court's view, have amounted to Congress hiding "elephants in mouseholes." *Id.* (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001)).

Determined to graft an extra-textual nexus requirement onto § 1915(g), the Second Circuit was left to figure out the content of that requirement. But it lacked any statutory guidance on the matter. So the court decided that it would simply analogize to "ordinary standing rules," which it assumed Congress must have had "in mind" when enacting § 1915(g). *Id.* at 297–98. In particular, the court reasoned that the second and third

32

elements of the standing test laid out in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992), are the necessary components of this implicit nexus requirement. *Id.* at 298–99.[4]  Therefore, to bring suit under the exception in the Second Circuit, a prisoner must show: (1) that the "imminent danger of serious physical injury that a three-strikes litigant alleges is *fairly traceable* to unlawful conduct asserted in the complaint,"[5] and (2) that "a favorable judicial outcome would *redress* that injury." *Id.* at 298–99.

The *Pettus* test has since caught on outside the Second Circuit. *See Fourstar v. United States*, 950 F.3d 856, 859–60 (Fed. Cir. 2020); *Lomax v. Ortiz-Marquez*, 754 F. App'x 756, 759 (10th Cir. 2018); *Ball v. Hummel*, 577 F. App'x 96, 96 n.1 (3d Cir. 2014) (per curiam); *see also Pinson v. U.S. Dep't of Justice*, 964 F.3d 65, 73 (D.C. Cir. 2020) (adopting a nexus requirement and holding that, at a minimum, it requires redressability).

This circuit most expressly considered whether § 1915(g) contains an implicit nexus requirement in *Meyers v. Commissioner of Social Security Administration*, 801 F. App'x 90, 96 (4th Cir. 2020) (per curiam).  There, the plaintiff conceded that there was no nexus between one of his claims and the alleged danger and the defendant conceded that plaintiff's other claim satisfied the nexus requirement. *Id.*  The court held, in a

---

[4] In the Second Circuit's analysis, the first standing element, a "concrete" and "particularized" injury, is supplanted by § 1915(g)'s textual requirement of an imminent danger of serious physical injury.

[5] The "fairly traceable" element of the *Pettus*-nexus requirement is not at issue here. *See* 554 F.3d at 298–99 & 299 n.1.

nonprecedential unpublished opinion, that § 1915(g) did contain some nexus requirement, though it declined to consider its contours given the parties' concessions. *Id.*[6]

As for the Second Circuit's decision, I do not find its rationale compelling. The *Pettus* test essentially changes the statutory phrase from "is under imminent danger of serious physical injury" to "is under imminent danger of serious physical injury *and* is suing in connection to that danger *and* is suing in such a way as to eliminate that danger." And the court's justification, though artfully stated, boils down to the notion that the imminent-danger exception's purpose as a "safety valve" should trump its plain meaning. But that approach runs headlong into the principle that "vague notions of a statute's 'basic purpose' are nonetheless inadequate to overcome the words of its text regarding the specific issue under consideration." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 261 (1993) (emphasis omitted).[7] When a statute expressly identifies conditions, it unambiguously includes only

---

[6] The parties here do not challenge the holding of *Meyers* that *some* nexus is required. Both agree that § 1915(g) includes some sort of nexus requirement, and that Hall's claims of alleged danger are fairly traceable to his FTCA claims.

[7] Anyway, the purpose here may cut both ways (as is often the case). The safety-valve theory of this statutory exception may well be right but that still would not inevitably require a nexus requirement. Congress could have wanted to create an exception only for claims that would directly redress life-threatening harms. But it is easy enough to imagine Congress having another view of the policy outcomes. Congress might have (1) wanted to allow a safety valve for prisoners in danger of harm, (2) wanted judges to consider whether that harm was likely and imminent, but (3) not wanted judges to engage in any kind of complicated analysis of how the harm related to the prisoner's claim. If it really is true that a prisoner is in imminent danger of death or serious injury, often their lawsuit will aim to avert that danger. And while Congress was concerned about frivolous litigants, once there is a risk of death, it is conceivable that Congress left the choice of what lawsuit to file in the threatened prisoner's hands, even if he were once a vexatious litigant. As between the risk of allowing a near-death prisoner to file a few frivolous lawsuits and the risk of (Continued)

those requirements.  *See Julmice v. Garland*, 29 F.4th 206, 208 (4th Cir. 2022).  And here, the only condition established by Congress is an imminent danger of serious physical injury.  It is not the role of courts to add requirements that Congress could have included but for whatever reason did not.[8]  *See Bates v. United States*, 522 U.S. 23, 29 (1997).

By asking this Court to incorporate a nexus requirement with its redressability element into § 1915(g), the government invites us to recreate the imminent-danger exception in a manner it perceives is more reasonable.  Because § 1915(g)'s plain language unambiguously omits such a requirement, I cannot accept that invitation.  And as to the government's floodgates concern—that a three-strikes prisoner might gain unfettered access to federal court by pleading some conclusory imminent danger—that problem appears to be one of the courts' own making, a byproduct of erroneously treating § 1915(g) as a mere pleading standard.  But as I will next explain, this floodgates concern isn't a real concern at all because the imminent-danger exception of § 1915(g) is not a pleading standard but a substantive requirement that a prisoner actually be in imminent danger.

---

allowing a mistake in a judge's standing analysis to deny a near-death prisoner his day in court, Congress might err on the side of a few more lawsuits.

[8] If the government believes that Congress meant to include such a redressability element in § 1915(g), the proper course is to bring the issue to Congress's attention so that it might amend the statute.  To that end, I would support directing the Clerk of Court to send a copy of these opinions to Congress as part of the Statutory Opinion Transmission Project, so that it might consider resolving this budding circuit split.  *See generally* Marin K. Levy & Tejas N. Narechania, *Interbranch Information Sharing: Examining the Statutory Opinion Transmission Project*, 108 Calif. L. Rev. 917 (2020).

#### B.     The imminent-danger exception is not a mere pleading requirement

I now turn to the district court's alternative basis for denying Hall *in forma pauperis* status:  failure to set forth facts reflecting an imminent danger of serious physical injury. In order to meet this threshold, Hall must have identified a danger that is (1) imminent (i.e., "Near at hand; . . . impending"); (2) serious (i.e., "grave, great"); and (3) of physical injury (i.e., resulting in "[b]odily harm or hurt").  *See Imminent*, *Serious*, *Physical Injury*, *Black's Law Dictionary* (6th ed. 1990).

The imminent-danger exception of § 1915(g) is not a mere pleading requirement. In other words, to file *in forma pauperis*, it is not enough that the complaint merely alleges that the plaintiff is in imminent danger of serious physical injury.  Rather, the plaintiff must actually be in imminent danger of serious physical injury.  This is because § 1915(g)'s text does not impose a pleading standard but a substantive requirement:  A prisoner may file *in forma pauperis* only if he "*is* under imminent danger of serious physical injury."  § 1915(g) (emphasis added).  "Is," not "alleges he is."  The word "is" demands actual being.  For example, consider the diversity-jurisdiction statute restricting a federal court's power to a suit that "is between . . . citizens of different States."  28 U.S.C. § 1332.  A federal court does not have diversity jurisdiction over an action merely because the plaintiff *alleges* the suit is diverse.  Jurisdiction depends on the litigants' *actual status* as citizens of different states, not their pleadings.  *See Sligh v. Doe*, 596 F.2d 1169, 1170 (4th Cir. 1979). Likewise, the plain language enacted by Congress in § 1915(g) tests the litigant's status, not the litigant's pleadings:  When the suit is initiated, is he in imminent danger of serious

36

physical injury?  If he is—and only if he *actually* is—he may bring suit despite his three-strike status.

In my view, an action should only be docketed *in forma pauperis* under the imminent-danger exception if the prisoner demonstrates that the purported danger exists. While the necessary evidence will vary case-to-case,[9] perhaps an affidavit (or its equivalent) may suffice at first.  But even if the litigant makes the required initial showing, it could still be rebutted by later-presented contradictory evidence, resulting in the revocation of *in forma pauperis* status.  *See, e.g.*, *Holley v. Meredith*, No. 7:18-cv-00535, 2022 WL 329204, at *1 (W.D. Va. Feb. 3, 2022) (granting defendant's motion to revoke plaintiff's *in forma pauperis* status as improperly granted because the plaintiff had three strikes under § 1915(g)).[10]

I recognize that some courts have treated § 1915(g) as a pleading standard, not a substantive requirement.  *See Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 585 (6th Cir. 2013); *Pettus*, 554 F.3d at 297; *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003); *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003).  Indeed, our circuit has

---

[9] Medical dangers could be proven with medical records, but dangers from other inmates—perhaps involving death threats—might be proven with prison security records. As with any contested issue of fact, there could be many kinds of relevant evidence.

[10] It is an open question in this circuit whether, after revoking *in forma pauperis* status, the court should (1) give the plaintiff an opportunity to tender the filing fee, or (2) automatically dismiss the case without providing such an opportunity.  *See id.* at *4. District courts often follow the Eleventh Circuit's rule from *Dupree v. Palmer*, 284 F.3d 1234, 1236 (11th Cir. 2002), holding that denial of a request to proceed *in forma pauperis* should result in the automatic dismissal of the suit without prejudice since the filing fee is due at the start of a lawsuit.  *See Holley*, 2022 WL 329204, at *4 (collecting cases).

37

treated it as a pleading requirement in unpublished decisions. *See Meyers*, 801 F. App'x at 95; *Newkirk v. Kiser*, 812 F. App'x 159 (4th Cir. 2020) (per curiam); *Johnson v. Warner*, 200 F. App'x 270, 272 (4th Cir. 2006) (per curiam). But the courts that have treated it as a pleading standard have seldom explained their reason for doing so. Instead, they simply throw out a conclusory statement that an allegation is all that's required, then move along. *See, e.g.*, *Vandiver v. Vasbinder*, 416 F. App'x 560, 562–63 (6th Cir. 2011) (faulting the district court for requiring a "showing" of imminent danger because an allegation was "all that is required" for § 1915(g)); *Ciarpaglini*, 352 F.3d at 330 (treating § 1915(g) as a pleading standard without explaining why). And while this court may look to other circuits for their wisdom and guidance, our obligation is to correctly interpret the statute's text, not to blindly follow the prevailing interpretive trend.

As discussed above, these courts' interpretation of § 1915(g)—that it is merely a pleading standard—deviates from the text's plain meaning. Just as courts may not alter the language of the statute to create new barriers for litigants, so too they may not alter the language to remove a hurdle that Congress imposed. Furthermore, treating the provision as an easily surmounted pleading requirement undermines the idea (often advanced by those very same courts) that it is meant to be a narrow "safety valve." By requiring only an allegation, rather than actual danger, § 1915(g) is reduced to a magic-words requirement, where a plaintiff can repeatedly allege a fabricated imminent danger without

38

ever having to prove it.[11] If, instead, the exception applies only in the rare case in which a prisoner is actually in serious danger, it would serve exactly that sort of break-glass emergency role without swallowing up the three-strikes rule altogether.

This case serves as an excellent example of why the imminent-danger exception is a substantive requirement, not a pleading standard. Most of Hall's asserted dangers, even if true, fail to qualify as imminent dangers of serious physical injury. For instance, the failure to schedule appointments for chronic back pain or the failure to put Hall into specialized housing for his breathing problems do not give rise to an imminent danger of serious physical injury absent facts tending to show that the requested treatment is medically necessary and that failing to provide it creates a serious danger. *See Richardson v. Hite*, 53 F. App'x 291, 292 (4th Cir. 2002) (per curiam) (finding no imminent danger where prison did not provide prisoner with cholesterol medication and the prisoner "failed to demonstrate his elevated cholesterol levels were necessarily dangerous or that medication was a medical necessity"); *Gresham v. Meden*, 938 F.3d 847, 850 (6th Cir. 2019) (finding no imminent danger where prison improperly gave the prisoner antipsychotic medication, causing "[c]hest pains, muscular restlessness, seizures, vomiting, stomach cramps, and dizziness," because those symptoms are "rarely life-threatening"). But one allegation stands out as potentially adequate: that there is an unmonitored 7 mm nodule in Hall's lung that might be cancerous. Failing to monitor a

---

[11] The three-strikes rule is aimed at prisoners who have consistently cried wolf by bringing frivolous lawsuits. To allow those same prisoners to avoid the consequences of their frivolous litigation by promising that this time things are really serious—that this time the wolf is real—would defy logic and experience.

nodule that may be a serious and progressive disease may constitute an imminent danger of serious physical injury under appropriate circumstances, because it may kill him soon, or it may worsen soon such that it seriously decreases his odds of survival.  *See Smith v. Wang*, 370 F. App'x 377, 378 (4th Cir. 2010) (per curiam); *McAlphin v. Toney*, 281 F.3d 709, 711 (8th Cir. 2002) (holding that a spreading infection fits the bill).

If § 1915(g) imposed only a pleading requirement, then Hall's mere assertion that the prison failed to provide proper follow-up screenings would be enough for him to get *in forma pauperis* status, regardless if this actually were the case.  And if that were so, we might reasonably be concerned about prisoners' ability to evade the three-strikes rule via fabricated allegations.  But because § 1915(g) imposes a substantive requirement, the court may look beyond Hall's complaint and *in forma pauperis* application to determine whether the prison is truly denying him medically-necessary cancer screenings.

Here, Hall's medical records, which he submitted to this court, appear to contradict his allegations by showing that follow-up testing was performed.[12]  I would therefore instruct that on remand the district court should carefully examine the records Hall has provided, along with other relevant records, and determine whether the record as a whole shows that he is under imminent danger of serious physical injury.

---

[12] Whether the medical records support or contradict Hall's alleged danger was not an issue that was substantially briefed by the parties on appeal.  So I take no position on whether, in fact, they show the existence of an imminent danger of serious physical injury. I would leave that question to be answered by the district court on remand.

\*          \*          \*

Congress created an exception from the three-strike rule for any prisoner who is "under imminent danger of serious physical injury." § 1915(g). That language requires actual (not just alleged) danger. But it does not require that the danger be redressed by the relief sought. As judges, we are bound to implement the laws that Congress enacts. *See EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 508–09 (2014) (observing that a court's "task is to apply the text [of the statute], not to improve upon it" (alteration in original) (quoting *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 126 (1989))). So I would vacate the district court's order and remand with instructions for it to consider whether, based on the medical records Hall has produced and other available evidence, Hall was indeed in imminent danger of serious physical injury when he filed suit.

41